# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-3319/3321

_____

| | | |
|---|---|---|
| Bruce W. Lane, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Arkansas. |
| | * | |
| Celadon Trucking, Inc., | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |

_____

Submitted: June 13, 2008
Filed: October 9, 2008

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and PIERSOL[1], District
Judge.

_____

PIERSOL, District Judge.

Celadon Trucking, Inc. ("Celadon") appeals the district court's application of
Indiana's lien reduction statute to Celadon's worker's compensation subrogation lien
on proceeds from a third-party settlement reached by its former employee, Bruce W.
Lane ("Lane"). On cross-appeal, Lane challenges the district court's decision to apply
Indiana law rather than Arkansas' made-whole doctrine. We affirm in part, reverse

_____

[1]The Honorable Lawrence L. Piersol, United States District Court for the
District of South Dakota, sitting by designation.

in part, and remand the case to the district court for entry of an amended judgment consistent with this opinion.

## I

Lane is a citizen of New Mexico. He worked as a truck driver for Celadon, a Delaware corporation with its principal place of business in Indiana. Celadon is self-insured for worker's compensation. As part of his employment relationship with Celadon, Lane signed a Worker's Compensation Acknowledgment & Agreement stating:

> WITNESSETH
> WHEREAS, Employer is in the business of hiring qualified employees to perform tasks in the trucking business; and
> WHEREAS, Employee desires to work in the trucking business for the Employer, and
> WHEREAS, Employee's duties require travel regularly in Employer's service in Indiana and other states;
> NOW, THEREFORE, the parties hereto, intending to be legally bound, hereby convenantly agree as follows:
> 1. Employee's employment is principally localized in Indiana. The employer has not rejected the Indiana's Worker's Compensation Act.
> 2. The laws of the State of Indiana, including the Indiana worker's Compensation Act and its benefits, shall apply to the settlement of any claim arising out of any job related injury or disease of the Employee.
> 3. Employee agrees to this method of resolution regardless of his or her state of residence or domicile.
> 4. Employee consents to the filing of his agreement with any appropriate state agency which handles the administration of workers' compensation claims for any state.

In 2004, during the course and scope of his employment with Celadon, Lane was injured when the tractor-trailer he was driving collided head-on with a tractor-trailer owned by Stevens Transport, Inc. ("Stevens"). The accident occurred in Arkansas. As a result of the accident, Celadon paid a total of $183,028.79 in worker's compensation benefits to or on behalf of Lane. The benefits were paid under Indiana worker's compensation laws. Lane and Celadon entered into a Stipulation of Compromise Settlement which was filed with the Worker's Compensation Board of Indiana on July 20, 2005. In the settlement agreement, Celadon specifically retained its rights under Indiana Code § 22-3-2-13, the Indiana worker's compensation subrogation statute, to recover any lien from amounts paid by any third party as a result of the accident.

On June 15, 2006, Lane filed a personal injury lawsuit against Stevens and the at-fault driver. The lawsuit was filed in Arkansas district court based on diversity jurisdiction under 28 U.S.C. § 1332. Lane gave notice of the lawsuit to Celadon. Celadon did not join in the lawsuit but Lane was advised that Celadon was asserting a lien on any recovery Lane might obtain from the defendants. Without obtaining Celadon's consent, Lane settled his personal injury claims with the defendants for an amount greater than the amount paid by Celadon for Lane's worker's compensation benefits.

Following settlement, Lane joined Celadon in the lawsuit in order to resolve the worker's compensation lien. The parties disagreed on what law applied to Celadon's lien. Lane argued that the lien was subject to Arkansas law and the made-whole doctrine under which Celadon would recover nothing. The district court ruled that Indiana law applied and entered judgment for Celadon. The district court rejected Celadon's argument that Lane's failure to seek its consent to settle entitled Celadon to full recovery, and it reduced the award under Indiana's lien reduction statute, Indiana Code § 34-51-2-19. The amount of the reduction was based on the district

court's findings regarding the extent to which the third-party settlement failed to make Lane whole.

On appeal, Celadon argues that the district court erred by applying Indiana's lien reduction statute. Celadon also contends that it is entitled to recover its entire lien amount because Lane did not obtain its consent to settle the case. On cross-appeal, Lane challenges the district court's decision to apply Indiana law rather than Arkansas' made-whole doctrine.

II

The first issue on appeal is whether the district court erred in applying Indiana law rather than Arkansas law to the issues surrounding Celadon's lien. A district court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *See Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991). Arkansas choice-of-law principles control in this diversity case because the district court sits in Arkansas. If the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue. *See Kovarik v. American Family Ins. Group*, 108 F.3d 962, 964 (8th Cir. 1997). The federal court should consider relevant state court decisions, "analogous decisions, considered dicta, . . . and any other reliable data." *Id.* at 964 (quoting *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995)). The Arkansas Supreme Court has not addressed the choice-of-law question when resolving a dispute over subrogation rights arising out of worker's compensation benefits paid to an employee.

In resolving a choice-of-law issue, the court must first determine what type of claim is involved because courts employ different choice-of-law methods depending on the claim. *See, e.g., Southern Farm Bureau Cas. Ins. Co. v. Craven*, 89 S.W.3d

369 (Ark. Ct. App. 2002). Celadon asserts that this is a contract case while Lane contends it is a tort case.

In support of its argument that this is a contract case to which contractual choice-of-law principles should apply, Celadon relies on *Summerford v. Covenant Transp.*, 370 F.Supp.2d 934 (D. Neb. 2005). The facts of *Summerford* are similar to the present case in that the employee, a resident of New Hampshire, was working as a truck driver for a Vermont corporation when he was injured in an accident in Nebraska. The employee received worker's compensation benefits under Vermont law. He then filed suit in federal district court in Nebraska against the third party who caused the accident, and eventually reached a settlement. The employer sought subrogation under Vermont law which allowed a dollar-for-dollar recovery. Nebraska followed the made whole doctrine and the employee claimed Nebraska law applied. The district court followed Nebraska conflict-of-laws rules and applied Vermont law because the employee received his worker's compensation benefits from Vermont. The district court cited *Turney v. Werner Enterprises, Inc.*, 618 N.W.2d 437, 440 (Neb. 2000), where the Nebraska Supreme Court held that the subrogation interests of an employer or insurer are determined by the law of the state in which the employee obtained the worker's compensation benefits. We are aware that a number of other courts also have adopted this conflict-of-laws rule, but we are not persuaded that the Arkansas Supreme Court would do so. An Arkansas appellate court refused to hold that the jurisdiction where the worker's compensation benefits are paid automatically has the most significant relationship to claims involving third-party tort settlements, *see Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763 (8th Cir. 1994) (citing *Orintas v. Meadows*, 706 S.W.2d 199, 201 (Ark. Ct. App. 1986)). We believe the Arkansas Supreme Court would agree with the holding in *Orintas* if faced with the issue.

The other two cases cited by Celadon do not convince us otherwise. The Sixth Circuit in *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069 (6th Cir. 1983), concluded that because the employer and the employee had entered into their employment agreement

in Ohio, the laws of that state were implicitly incorporated into their agreement and therefore Ohio law would govern the employer's indemnification action for worker's compensation benefits paid under Ohio law. The Sixth Circuit said its decision to apply Ohio law was in accord with "the decisions of the majority of those courts which have considered this question." *Id.* at 1073 (citing 2 Larson, WORKMAN'S COMPENSATION, DAMAGE SUITS, § 88.00 (Desk Ed. 1983) ("As to third-party actions, if compensation has been paid in a foreign state and suit is brought against a third party in the state of injury, the substantive rights of the employee ... and the employer are ordinarily held governed by the law of the foreign state, although there is contra-authority."). The district court in *Bearden v. Beeler*, 2006 WL 1980149 (W.D. Ky. 2006), followed the reasoning in *Harris* and applied the law of the state where the worker's compensation benefits were paid. Again, we do not believe the Arkansas Supreme Court would automatically apply the law of the state where the worker's compensation benefits were paid.

Although the case was not cited by either party in this appeal, the conflict-of-laws issue in *Orintas v. Meadows*, 706 S.W.2d 199, 201 (Ark. Ct. App. 1986), is similar to the case at hand. In *Orintas*, Ohio residents were injured in an accident in Arkansas. They received worker's compensation benefits from their employer, an Indiana corporation. They hired an Arkansas attorney, Orintas, to pursue a personal injury claim against the estate of the other driver who had been an Arkansas resident. A settlement in the amount of $50,000 was reached and a dispute arose as to the distribution of settlement proceeds and the amount of Orintas' attorney's fee, which would have been greater under Indiana law than Arkansas law. The trial court concluded that Arkansas law applied to the distribution of the settlement proceeds and the amount of the attorney's fee. Orintas appealed, arguing that Indiana law applied. The Arkansas appellate referred to the "five factors to be considered in determining whether to apply Arkansas law or the law of the foreign state," and a very brief analysis of Arkansas' contacts followed. *Id.* at 216. The analysis reveals that the Arkansas appellate court was primarily concerned with the rights of attorney Orintas,

an Arkansas citizen, rather than the rights of the non-resident employees. The appellate court upheld the trial court's finding that the contacts with Arkansas were significant enough to apply Arkansas law. The appellate court also ruled that the employees' acceptance of payments under the Indiana Worker's Compensation Act did not bind them to accept the third-party settlement rules under Indiana law. *Id.* at 216-17.

Lane did not cite *Orintas* in support of his argument that this is a tort case and that Arkansas tort conflict-of-law principles should apply. Instead, Lane relies primarily on a Wisconsin Supreme Court decision, *Drinkwater v. American Family Mut. Ins.*, 714 N.W.2d 568 (Wis. 2006). *Drinkwater* involved an insurance subrogation dispute between the plaintiff, a Wisconsin insured, and an Iowa health insurance plan (the "Plan") that provided coverage for the plaintiff through his Iowa employer. After the plaintiff was injured in a traffic accident in Wisconsin, he recovered $250,000 from the tortfeasor's insurer. During the plaintiff's hospitalization, the Plan advanced $89,000 for his medical expenses. Under the group health insurance contract and Iowa law, the Plan had a right to recoup the $89,000. Under Wisconsin's "made-whole" doctrine, the Plan could not recoup this amount because the plaintiff's actual losses far exceeded the amount he received from the tortfeasor's insurer. The lower court applied Wisconsin law, barring recoupment. The Wisconsin Supreme Court affirmed. The Court found that the issue was not simply one of contract because it implicated the tort aspects of the plaintiff's recovery for his personal injuries. The Court relied on its two most recent choice-of-law decisions which established two "rules": The first rule "is that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance." *Id.* at 575-76 (internal quotations omitted). The second rule is that "if it is not clear that the nonforum contacts are of greater significance, then the court applies [Leflar's] five choice-influencing factors" for determining the applicable law. *Id.* at 576. After listing the two states' contacts and finding them to be of equal

significance, the court examined Leflar's five factors and found that four pointed to Wisconsin law.

The reasoning in *Drinkwater* is persuasive. We applied a similar choice-of-law test in *Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763 (8th Cir. 1994). In *Simpson*, Arkansas citizens working as truck drivers were injured in an accident in Massachusetts. Liberty Mutual, the worker's compensation carrier for the employer, paid benefits to the employees under the Arkansas Workers' Compensation Act. After settling their Massachusetts state court personal injury lawsuit against the tortfeasors, the employees filed a declaratory judgment action in Arkansas district court to determine Liberty Mutual's subrogation rights to the settlement proceeds. Without determining whether Massachusetts or Arkansas law applied, the district court ruled that Liberty Mutual was entitled to recoup the worker's compensation benefits it paid. The issue of whether Liberty Mutual's lien was more akin to a contract or a tort claim was not raised in *Simpson*, but we applied the choice-of-law rules that Arkansas courts use in tort cases (Leflar's five choice-influencing considerations), and determined that Massachusetts law should be applied. We affirmed the district court's judgment because, under Massachusetts law, Liberty Mutual was entitled to the proceeds in dispute. We predict the Arkansas Supreme Court would follow a similar approach if presented with a choice-of-law question involving a dispute over worker's compensation subrogation rights.

In *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838 (Ark. 2006), the Arkansas Supreme Court applied two conflict-of-law rules much like those applied in *Drinkwater*. *Ganey* involved a products liability action filed by a Louisiana citizen who was severely injured while driving an all-terrain vehicle (ATV) in Arkansas. The defendants were the manufacturer of the ATV and the retailer who sold it to the plaintiff in Louisiana. The action would have been barred by Louisiana's one-year statute of limitation, but not by Arkansas' three-year statute. The lower court applied the Louisiana statute of limitation and dismissed the action. The Arkansas Supreme

Court affirmed. The Court noted that, in *Wallis v. Mrs. Smith's Pie Co.*, 550 S.W.2d 453 (Ark. 1977), it adopted a choice-of-law test involving the five choice-influencing factors promulgated by Dr. Robert A. Leflar. The five factors are: 1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum's governmental interests; and 5) application of the better rule of law. *Ganey*, 550 S.W.2d at 846. The Court explained that it had adopted the choice-influencing factors to soften the application of the doctrine of lex loci delecti, and that both the lex loci delecti doctrine and Leflar's five choice-influencing factors should be considered. First considering the doctrine of lex loci delecti, the Arkansas Supreme Court explained that Louisiana had a "more significant relationship" to the parties. In fact, "[t]he only relationship to Arkansas [was] that it [was] the location of the accident." *Id.* at 847. The Court then turned to Leflar's five choice-influencing factors and concluded that they also favored application of Louisiana law. We believe *Ganey* is instructive, not only because the Court cleared up some confusion as to what choice-of-law method applies in Arkansas, but also because of the similarities to the present case: Arkansas law was more favorable to the plaintiff in *Ganey*, but the only contact Arkansas had was being the location of the accident.

We must apply the Arkansas conflict-of-law principles from *Wallis* and *Ganey* to the present case to determine whether Arkansas or Indiana law should apply to Celadon's subrogation rights. *See Whirlpool Corp. v. Ritter*, 929 F.2d at 1320 (district court sitting in diversity must apply the choice-of-law rules of the state in which it sits). Under Arkansas law, first we must decide which state has the most significant relationship to the parties and the issues. At the time of the accident, Lane worked for an Indiana employer and was insured by the company for worker's compensation. The Worker's Compensation Acknowledgment & Agreement signed by Lane provided that Indiana law would apply to the settlement of any claim arising out of

a work-related injury.[2] Lane's work as a truck driver involved travel in Indiana and other states. After he was injured, Lane obtained worker's compensation benefits under Indiana law. He settled his worker's compensation claim with Celadon, and agreed that Celadon retained its subrogation rights under Indiana Code § 22-3-2-13. Furthermore, unlike in *Drinkwater* where the plaintiff was a Wisconsin citizen and the court found that Wisconsin had an interest in fully compensating its citizens who are tort victims, Lane is not a resident of Arkansas. The only connection with Arkansas in this case is the accident location. Indiana has a more significant relationship.

The next step under Arkansas conflict-of-law principles is to apply Leflar's five choice-influencing factors. *Gomez v. ITT Educ. Services, Inc.*, 71 S.W.3d 542, 546 (Ark. 2002). The first factor, predictability of results, "includes the . . . ideal that the decision in litigation on a given set of facts should be the same regardless of where the litigation occurs, so that forum-shopping will benefit neither party." *Gomez*, 71 S.W.3d. at 547 (quoting Robert A. Leflar, AMERICAN CONFLICTS LAW § 103 at 205 (3d ed. 1977)). Predictability is particularly important to Celadon. The self-insured company has a nationwide network of truck drivers. If its worker's compensation subrogation rights in every case were determined by the place of the accident, the results would be highly unpredictable. The employees who choose to work with the Indiana company, and especially those who sign an agreement to have Indiana law apply to work-related injury claims, can foresee the application of Indiana law to disputes arising out of Celadon's subrogation rights. The application of Indiana law in this case fosters predictability.

---

[2]Contrary to Lane's argument, the agreement to apply Indiana law is not irrelevant and we must consider it in deciding what state has the most significant relationship to the issue before us. The Iowa choice-of-law clause in *Drinkwater* was disregarded by the Wisconsin Supreme Court in part because it was a bargain between the Plan and the plaintiff's employer, not the plaintiff himself. *See Drinkwater*, 714 N.W.2d at 573-75. Lane personally agreed to application of Indiana law. This contributes to our finding that Indiana has a more substantial relationship with the parties and with the subrogation claim.

When the forum state has little or no contact with a case and nearly all of the significant contacts are with another state, the second factor, maintenance of interstate and international order, suggests that the forum should not apply its own law to the dispute. *See Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620-21 (8th Cir. 2001). In the present case, this factor points towards application of Indiana law because the only contact with Arkansas is the location of the accident and Indiana has the most significant contacts with the parties and with Celadon's lien.

The third consideration, simplification of the judicial task, does not favor application of either states' laws. It is easy to apply Indiana's subrogation statute. Likewise, it is easy to apply the Arkansas made-whole rule.

The fourth factor, advancement of the forum's governmental interests, clearly favors application of Indiana law. Arkansas has an interest in protecting those injured by negligent conduct within its borders, "but even then, courts have recognized that the state's interest is only slight and does not support application of its law to the litigation." *Hughes v. Wal-Mart*, 250 F.3d at 621. The purpose of worker's compensation statutes is to protect the rights of both the employee and the employer or insurer. *See Simpson*, 28 F.3d at 765. Applying Arkansas' made-whole doctrine to Celadon's lien on the amount Lane recovered when no Arkansas citizen is involved would do little to advance the state's governmental interest. Arkansas has such a limited connection to this case that its governmental interests are outweighed by those of Indiana.

The fifth and final consideration is the better rule of law. Recognizing that "states often have competing policy considerations for governing similar transactions or events in different manners such that the laws do not necessarily lend themselves to being labeled either 'better' or 'worse,'" we have counseled that courts should refrain from pronouncing the better law when the other Leflar factors point decidedly toward the application of one state's law. *Hughes v. Wal-Mart,* 250 F.3d at 621.

-11-

Because the other considerations persuade us that Indiana law applies in this case, we will not undertake the task of ascertaining which states' worker's compensation subrogation law is better. It is especially appropriate to not have to determine which subrogation law is "better" where, as here, which is better is a question of differing social policies reflected in the different choices made by state legislatures.

Since the above factors favor application of Indiana law over the law of the forum state of Arkansas, Indiana law will govern Celadon's recovery of its lien in this case.

We must next determine whether the district court correctly applied Indiana's lien reduction statute, Indiana Code § 34-51-2-19. We hold that it did not. The lien reduction statute is part of Indiana's Comparative Fault Act. It provides in relevant part:

> Sec. 19. If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exist in respect to a claim for personal injuries or death and the claimant's recovery is diminished:
> (1) by comparative fault; or
> (2) by reason of the uncollectibility of the full value of the claim ...;
> the lien or claim shall be diminished in the same proportion as the claimant's recovery is diminished. The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses.

IND.CODE § 34-51-2-19. In *Allstate Ins. Co. v. Smith*, 656 N.E.2d 1156 (Ind. Ct. App. 1995), the Indiana appellate court refused to apply the lien reduction statute to the automobile insurer's subrogation claim because the recovery in the personal injury action was not diminished by comparative fault or uncollectibility. *Id.* at 1158. Later, in *Barclay v. Universal Underwriters Group*, 703 N.E.2d 169 (Ind.Ct.App. 1999), the Indiana appellate court rejected the plaintiff's argument that the lien reduction statute should apply to a worker's compensation subrogation lien. The court noted that

-12-

comparative fault was not an issue in the plaintiff's settlement and that nothing in the record indicated the plaintiff did not collect the full amount of the settlement upon which he and the tortfeasor had agreed. *Id.* at 171. Lane has failed to show that his settlement was diminished by either comparative fault or uncollectibility.[3] Accordingly, the lien reduction statute does not apply to Celadon's lien, and the district court erred in applying it.

Finally, this Court must decide Celadon's remedy. Indiana's worker's compensation subrogation statute expressly provides for notification and approval by the employer of any settlement reached between an employee and third party:

> No release or settlement of claim for damages by reason of injury or death, and no satisfaction of judgment in the proceedings, shall be valid without the written consent of both employer or the employer's compensation insurance carrier and employee or his dependents, except in the case of the employer or the employer's compensation insurance carrier, consent shall not be required where the employer or the employer's compensation insurance carrier has been fully indemnified or protected by court order.

IND.CODE § 22-3-2-13. The Supreme Court of Indiana has described the purpose of this statute:

> The section provides for only two means of settling a claim against a third party. The employer must either give written consent or be "fully indemnified or protected by court order." The reason the legislature required written consent as one alternative is obvious. Because settlement serves as a bar to further recovery against the third

---

[3]At oral argument, Lane's counsel stated the reason for the settlement at the lower amount was because the injured party was going to lose his home to foreclosure if he did not get money quickly. That unfortunate circumstance is not one that allows for pro rata diminishment of the subrogation lien.

> party, without a consent requirement, an employee could settle a lawsuit for an amount well below medical and disability costs and leave the employer with nowhere to turn for the additional money owed. Requiring the written consent of the employer is designed to protect an employer from being shortchanged without its advance approval.

*Koval v. Simon Telelect, Inc.* 693 N.E.2d 1299, 1309 (Ind. 1998) (internal quotation and citation omitted). There is no dispute that Celadon did not consent to Lane's settlement with the defendants. Because Celadon has statutory lien rights and Lane did not comply with the consent requirement of section 22-3-2-13, the district court must order Lane to repay Celadon the $183,028.79 it paid for Lane's worker's compensation benefits. *See, e.g., Schneider Nat'l Carriers, Inc. v. Nat'l Employee Care Systems, Inc.*, 469 F.3d 654 (7th Cir. 2006) (worker's compensation insurance carrier awarded lien amount minus attorney fees after settling parties failed to comply with the insurer consent requirement of Indiana Code § 22-3-2-13). Pursuant to the statutory requirement that an employer or insurer asserting subrogation rights must pay a pro rata share of the costs and, when a lawsuit was filed, a one-third contingency attorney's fee, Celadon's pro-rata share of costs ($6,448.92) and a one-third contingency attorney's fee ($58,850.36) must be deducted from its lien. *See* IND.CODE § 22-3-2-13. This results in a total payment to Celadon in the amount of $117,729.51.

### III

We affirm the district court's decision to apply Indiana law, but we reverse the district court's judgment reducing Celadon's lien under the lien reduction statute. We remand the case to the district court for entry of an amended judgment consistent with this opinion.

_____