# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3765

_____

Shelby County Health Care Corporation, doing business as Regional Medical Center,

*Plaintiff - Appellant,*

v.

Southern Farm Bureau Casualty Insurance Company; Medford Farm Partnership; Aaron Medford; Barbara Ford, as Special Administratrix of the Estate of John Dallas Smiley,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: September 20, 2016
Filed: April 28, 2017

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Shelby County Health Care Corporation, doing business as Regional Medical Center ("The Med," for short), seeks relief for alleged impairment of a hospital lien. The district court dismissed The Med's claim on the ground that it was barred by the *Rooker-Feldman* doctrine and, alternatively, that it failed under Arkansas law. We

conclude that the claim is not barred by *Rooker-Feldman*, and that Tennessee law should apply, so we vacate the district court's order and remand for further proceedings.

I.

The hospital lien in question arose from treatment that John Smiley received at The Med in Memphis, Tennessee, from February 18, 2009, when he was involved in an automobile accident, until March 6, 2009, when he died of his injuries. The Med promptly filed a hospital lien for Smiley's medical bills pursuant to the Tennessee Hospital Lien Act in the Shelby County Circuit Court in Tennessee. Tenn. Code Ann. § 29-22-101. The Med mailed a copy of the hospital lien to the attorneys for Smiley's estate.

Barbara Ford was appointed administrator of Smiley's estate by an Arkansas circuit court. Ford negotiated a settlement with the tortfeasor's insurer, Southern Farm Bureau Casualty Insurance Company. As part of the settlement negotiations, Ford sent to the insurer Smiley's hospital bill and records from The Med documenting Smiley's pain and suffering. The insurer, along with its insured Aaron Medford, and Medford's employer Medford Farm Partnership, settled with Ford for $700,000. The administrator of the estate allocated the entire $700,000 to recovery for wrongful death and none to the recovery of compensatory damages for medical services and other expenses.

In September 2010, the settling parties (which did not include The Med) memorialized the agreement in an Arkansas probate court judgment that purported to extinguish any outstanding liens. The Med learned of the probate court judgment by April 2011, but did not seek to intervene in the proceedings. The probate court closed Smiley's estate on September 16, 2011.

The Med sued the settling parties to recover $355,364.16 in damages for the impairment of its hospital lien. The district court granted summary judgment for the defendants on the ground that The Med failed to enforce its lien by neglecting to file it in the Arkansas probate court. The Med appealed, and this court reversed, concluding that the district court misconstrued The Med's claim as one for lien enforcement rather than lien impairment. *Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 798 F.3d 686, 689 (8th Cir. 2015). We remanded for the district court to address, among other questions, whether Arkansas law or Tennessee law applied to The Med's lien impairment claim. *Id.* at 689-90.

On remand, the district court again granted summary judgment for the settling parties. The court first ruled that the *Rooker-Feldman* doctrine barred The Med's claims. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923). Alternatively, the court reasoned that Arkansas's choice-of-law rules called for the application of Arkansas law, and that The Med's claim failed under Arkansas law. The court concluded that The Med did not properly perfect its lien under Arkansas law, and that even if the lien were perfected, it would be unenforceable because Arkansas law prevents a hospital lien from attaching to a wrongful death recovery.

II.

We consider first the district court's ruling that it lacked jurisdiction. In concluding that The Med's claim "appears to be barred by the *Rooker-Feldman* doctrine," the district court reasoned that "[t]o now find that there was a valid, enforceable lien would effectively reverse the decision made by the Arkansas probate court." The court explained that the probate court found that The Med's lien was void and not enforceable in Arkansas, while The Med now alleges that the defendants impaired a valid lien.

-3-

The *Rooker-Feldman* doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine does not apply here, because The Med was not a "state-court loser." The Med was not a party to the state-court probate proceedings. Whatever narrow application the *Rooker-Feldman* doctrine might have to *de facto* appeals by non-parties is not germane here, where The Med has no relationship to the parties in probate court. *Cf. Lance v. Dennis*, 546 U.S. 459, 466 n.2 (2006) (per curiam) (reserving judgment on whether *Rooker-Feldman* applies where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent).

The district court relied on *Lemonds v. St. Louis County*, 222 F.3d 488 (8th Cir. 2000), which stated a broader view of the *Rooker-Feldman* rule: "The *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions." *Id*. at 492. Starting from that premise, *Lemonds* said the fact that federal-court plaintiffs were not parties to an earlier state-court lawsuit "does not automatically preclude a *Rooker-Feldman* bar." *Id*. at 495. The court ruled that non-parties who could have pursued a claim in state court were barred by *Rooker-Feldman* from proceeding in federal court when "the entire upshot of a favorable decision" would have been "to unwind the decision of the state court." *Id*. at 496.

*Lemonds*, however, has been superseded by the Supreme Court's clarification of the *Rooker-Feldman* doctrine. In *Exxon Mobil*, the Court observed that "the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases." 544 U.S. at 283. The Court emphasized that the doctrine applies only to claims brought by "state-court losers" and "does not otherwise override or supplant preclusion doctrine or augment the circumscribed

-4-

doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id*. at 284. In *Lance*, the Court explained that "[t]he *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." 546 U.S. at 466. To apply *Rooker-Feldman* here to a non-party who had an opportunity to intervene in state-court proceedings would echo the pre-*Exxon Mobil* lower-court rulings that expanded the doctrine too far.

In this case, moreover, The Med does not seek to reverse the order of the Arkansas probate court. The Med acknowledges that it could not seek a judgment directly against the proceeds of the personal injury settlement; those proceeds were awarded to Ford. In this case, The Med asserts that the probate court's order is *evidence* that the settling parties impaired The Med's hospital lien, and The Med seeks a judgment against Ford and the other settling parties. The *Rooker-Feldman* doctrine thus does not bar The Med's claim.

## III.

The district court ruled alternatively that Arkansas law applies to the dispute between the parties, and that The Med's claim fails under Arkansas law. On appeal, the parties debate whether Arkansas law or Tennessee law should apply.

Federal jurisdiction over this case is based on diversity of citizenship, so we apply the choice-of-law rules of Arkansas, the forum State, to determine which law governs the dispute. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Arkansas law, the framework for deciding the choice-of-law question depends on the type of claim involved. A contract claim triggers different analysis than a tort claim.

The Med argues that the case raises an issue in contract, because hospital liens arise from an express or implied contract that is formed when the hospital provides emergency medical services. *See Midwest Neurosurgery, P.C. v. State Farm Ins. Cos.*, 686 N.W.2d 572, 578 (Neb. 2004). But the Arkansas Supreme Court, in considering its own State's hospital lien statute, has not accepted that characterization. In *Stuttgart Regional Medical Center v. Cox*, 33 S.W.3d 142 (Ark. 2000), the court rejected a patient's argument that a hospital enforcing its lien brought an action that "sounded in contract" based on agreements with a hospital; instead, the hospital's "sole cause of action was to enforce its lien." *Id.* at 145.

Here, of course, the action is not to enforce a lien, but to seek relief for impairment of a lien. Ford, citing *Lane v. Celadon Trucking, Inc.*, 543 F.3d 1005 (8th Cir. 2008), argues that the action raises an issue in tort. *Lane* involved a worker's compensation subrogation claim in which an employer paid worker's compensation benefits to an injured employee. The employer had negotiated both an employment agreement and a settlement agreement in which the employer retained its statutory rights to recover amounts paid to the employee by third parties based on the injury. The employer then asserted a worker's compensation lien on any recovery the employee might receive from the tortfeasor who caused the injury, and later attempted to recover proceeds of a settlement that the employee received from the tortfeasor. In determining the type of action involved for purposes of choice-of-law analysis, this court concluded that despite the agreements and the lien, "the issue was not simply one of contract because it implicated the tort aspects of the plaintiff's recovery for his personal injuries." *Id*. at 1009.

Although there are differences between a subrogation claim to recover on a worker's compensation lien and a claim alleging impairment of a hospital lien, *see Nat'l Ins. Ass'n v. Parkview Mem'l Hosp.*, 590 N.E.2d 1141, 1145 (Ind. Ct. App. 1992), we think the dispute between the parties in this case is still best characterized as raising an issue in tort. The relevant tort here is the alleged impairment of the

hospital lien secured by The Med.  A lien is an interest in another's property.  A claim of lien impairment is an assertion that the defendants interfered with this property interest, a wrong analogous to the common-law tort of conversion.  *See Unigard Ins. Co. v. Tremont*, 430 A.2d 30, 32-33 (Conn. Super. Ct. 1981); *Rew v. Maynes*, 125 N.W. 804, 804 (Iowa 1910).  We therefore expect that the Arkansas courts are likely to treat a claim of lien impairment as raising an issue in tort rather than contract, and we proceed with the choice-of-law analysis accordingly.

Once upon a time, Arkansas courts resolving choice-of-law questions in tort cases followed the rule of *lex loci delicti*:  apply the law of the place where the tort was committed.  *E.g.*, *Wheeler v. Sw. Greyhound Lines, Inc*., 182 S.W.2d 214, 215 (Ark. 1944).  More recently, however, the Arkansas Supreme Court has "evolved" to consider the five choice-influencing factors identified by Professor Robert Leflar "to soften the formulaic application of *lex loci delicti*."  *Schubert v. Target Stores, Inc.*, 201 S.W.3d 917, 922 (Ark. 2005).  As we understand current Arkansas law, the state supreme court considers first which State has the most significant relationship to the action and the parties, and then analyzes the Leflar factors:  (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law.  *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838, 846-47 (Ark. 2006).

In determining which State has the most significant relationship to the action and parties, Arkansas courts examine the contacts that are most relevant in the particular case.  Here, the most significant contacts do not weigh clearly in favor of either Arkansas or Tennessee.  The medical bills that formed the basis for the hospital lien were incurred in Tennessee.  The Med filed its hospital lien in Tennessee, would have received funds based on the lien in Tennessee, and thus felt the harm from any impairment of the lien in Tennessee.  But the settlement agreement and corresponding probate order that allegedly impaired the lien were filed in Arkansas.  The parties'

domiciles do not tip the balance. The Med is a Tennessee corporation that conducts business exclusively in Tennessee. Ford is domiciled in Virginia. The insurer is incorporated in Mississippi and does business in several states, including Arkansas, but not Tennessee. Medford is an Arkansas resident, employed by Medford Farm Partnership, which operates in Arkansas. That Mr. Smiley's automobile accident occurred in Arkansas carries little weight in the analysis. The relevant wrong here is alleged impairment of the lien, not negligent operation of a vehicle, and the factors described above are most significant in the lien impairment action.

So we turn to the Leflar factors, three of which are most pertinent here. The first factor is predictability of results. "The consideration here is the idea that a decision following litigation on a given set of facts should be the same regardless of where the litigation occurs in order to prevent forum shopping." *Schubert*, 201 S.W.3d at 922. We think this factor favors Tennessee law. Judge Moody was quite right in *State Farm Mut. Auto. Ins. Co. v. Shelby Cty. Health Care Corp.*, No. 3:10CV00169, 2011 WL 5508854, at *3 (E.D. Ark. Nov. 10, 2011), that "[f]orcing The Med, or any other regional hospital, to predict [in] which state an insurer would administer the claims of Med patients would certainly result in unpredictable results." Applying Tennessee law to hospital liens filed in Tennessee creates consistent outcomes for patients who live in different States when they seek medical care at the same facility in Tennessee. Forum-shopping might not be a concern in the case of deceased patients, because probate law restricts where an estate could settle a claim. But many patients live beyond their stay at The Med, and uniform application of Tennessee law prevents forum shopping in lien impairment actions involving former patients. The choice of law should not depend on whether a patient has died.

The second Leflar factor—the maintenance of interstate and international order—also favors Tennessee law. This factor focuses on whether one State's law would "manifest disrespect for [another state's] sovereignty or impede the interstate movement of people and goods." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1125 (8th

Cir. 2012) (alterations in original). The record reflects that The Med is the only Level 1 Trauma Center within a 150-mile radius of Memphis, and the facility renders life-saving trauma care to hundreds of Arkansas residents per year. Arkansas itself encourages hospitals to provide emergency services to its residents, as illustrated by its own hospital lien statute. Ark. Code Ann. § 18-46-104. But application of Arkansas law here would be disruptive to interstate order, because it would deprive The Med of compensation for emergency care administered to severely injured Arkansans.

Under the fourth Leflar factor—the advancement of the forum's interest—we determine the forum's interest by examining its contacts with the case. *Schubert*, 201 S.W.3d at 923. Arkansas's primary contact with this lien impairment action is that an Arkansas probate court order memorialized the settlement that The Med alleges impaired its lien. Arkansas's hospital lien statute reflects the State's general interest in encouraging hospitals to provide emergency services to its residents. *See* Ark. Code Ann. § 18-46-104. In the case of a wrongful death settlement, however, Arkansas law prevents a third party from attaching a lien to a wrongful-death recovery. Ark. Code Ann. § 16-62-102(e). And according to a divided opinion of the Arkansas Court of Appeals, Arkansas law permits the administrator of an estate like Ford to allocate all of a settlement in a wrongful-death and survivor action to the wrongful-death aspect of the action, and none to medical expenses that would benefit the creditors of the estate. *Mid-South Adjustment v. Estate of Harris*, 189 S.W.3d 518, 520 (Ark. App. 2004).

Because the settlement here was allocated entirely to a wrongful-death recovery, the fourth factor concerning advancement of the forum's interest arguably points to Arkansas law. But Arkansas's statutory policy preventing creditors from attaching liens to wrongful-death recoveries is implicated as to the full recovery here only because *Mid-South Adjustment* allows an estate's administrator unilaterally to allocate a settlement to avoid the claims of an estate's creditors. The Arkansas

legislature has not spoken to the allocation issue, and given the concerns expressed by the dissenting judges about tension between the State's probate laws and the wrongful-death statute, *id*. at 520-22 (Robbins, J., dissenting), we are not confident that the Arkansas Supreme Court would agree with the intermediate court. Even taking the court of appeals decision as the best indicator of current Arkansas law, the court did not identify a strong Arkansas public policy in favor of the allocation procedure.

In any event, we are not convinced that the forum's interest outweighs the concerns previously expressed about forum shopping and the maintenance of interstate order that favor application of Tennessee law. The Arkansas Supreme Court, speaking of interstate order, has acknowledged that "[d]eference to sister state law in situations in which the sister state's substantial concern with a problem gives it a real interest in having its law applied, even though the forum state also has an identifiable interest, will at times usefully further this part of the law's total task." *Gomez v. ITT Educ. Servs.*, 71 S.W.3d 542, 547 (Ark. 2002) (quoting Robert A. Leflar, *American Conflicts of Law* § 104, at 208 (3d ed. 1977)). We believe that this case presents such an occasion.

Having considered both which State has the most significant relationship to the parties and the action, and Professor Leflar's choice-influencing factors, we conclude that Tennessee law should apply to The Med's lien impairment claim. We therefore reverse the district court's order granting summary judgment in favor of the defendants and remand the case for further proceedings in accordance with this opinion.

SHEPHERD, Circuit Judge, dissenting.

Until now, the commonplace procedure where an Arkansas resident is fatally injured in an accident that occurs in Arkansas is that an Arkansas probate court

appoints an administrator in an Arkansas county for the purpose of bringing a wrongful death claim. After that claim is settled in an Arkansas probate court, there has been no question that the proceeds from that action do not become a part of the assets of the estate and, therefore, are not subject to the debts of the deceased. Thus, the court defies controlling Arkansas law by holding that an out-of-state medical care provider—who is located less than 100 miles away and has actual notice of the proceedings, but nevertheless fails to file a claim against the estate, perfect an Arkansas medical lien, or otherwise appear in the probate case—is entitled to proceeds from a wrongful death action. Accordingly, I respectfully dissent.

Accordingly, although I agree with the majority's determination that the Rooker-Feldman doctrine does not bar the present action, I cannot agree with the outcome of its conflict of laws analysis. The state, in Arkansas Code Annotated section 16-62-102(e), made unmistakably clear its policy goals with regard to the question of whether damages recovered by survivors of the deceased for wrongful death may be claimed by creditors by stating that "[n]o part of any recovery referred to in this section shall be subject to the debts of the deceased or become, in any way, a part of the assets of the estate of the deceased person." Further, this policy has been reiterated and applied in a number of subsequent state court decisions. See, e.g., Douglas v. Holbert, 983 S.W.2d 392, 396 (Ark. 1998).

I agree with the majority's conclusion that this action sounds in tort rather than in contract. See Stuttgart Reg'l Med. Ctr. v. Cox, 33 S.W.3d 142, 145 (Ark. 2000). Thus, Arkansas courts first determine which state has the most significant relationship to the parties and the litigation by examining the contacts relevant to the dispute. Ganey v. Kawasaki Motors Corp., U.S.A., 234 S.W.3d 838, 847 (Ark. 2006). Next, the courts consider the *lex loci delicti* doctrine and Professor Leflar's five "choice-influencing considerations." Id. (internal quotation marks omitted). Those factors are "1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum's governmental

-11-

interests; and 5) application of the better rule of law." <u>Gomez v. ITT Educ. Servs., Inc.</u>, 71 S.W.3d 542, 546 (Ark. 2002).

Assuming that an examination of the relevant contacts does not favor the application of either state's law, I dissent from the majority's conclusion that factors one, two, and four indicate that Tennessee law should apply. The first factor—predictability of results—weighs in favor of applying Arkansas law. "The consideration here is the ideal that a decision following litigation on a given set of facts should be the same regardless of where the litigation occurs in order to prevent forum shopping." <u>Schubert v. Target Stores, Inc.</u>, 201 S.W.3d 917, 922 (Ark. 2005). Simply put, forum shopping is not a legitimate concern in a probate case such as this when there is only one state in which the estate could be settled. While the majority correctly observes that this could potentially be a concern when a patient does not pass away during the course of his treatment, the majority's opinion loses sight of the fact that this is not what happened here.

The second factor—maintenance of interstate order—likewise favors application of Arkansas law. "When the forum has little or no interest in applying its own law, its parochial decision to do so anyway could adversely affect the smooth functioning of the federal system and lead to retaliation in future cases by courts in the other state with a substantial interest in having its law applied." 2 David Newbern et al., <u>Arkansas Civil Practice & Procedure</u> § 6:6 (5th ed. 2010). It is for this reason that the state supreme court has "note[d] that '[d]eference to sister state law in situations in which the sister state's substantial concern with a problem gives it a real interest in having its law applied, even though the forum state also has an identifiable interest, will at times usefully further this part of the law's total task.'" <u>Gomez</u>, 71 S.W.3d at 547 (second alteration in original) (quoting Robert A. Leflar, <u>American Conflicts of Law</u> § 104, at 208 (3d ed. 1977)). On the other hand, "where the enforcement of the foreign law would contravene the established policy of the state

of the forum, the law of the forum governs." Sutherland v. Ark. Dep't of Ins., 467 S.W.2d 724, 726 (Ark. 1971).

"Under current Arkansas law, when a person's death is caused by the negligence of another, two causes of action arise." Davis v. Parham, 208 S.W.3d 162, 167 (Ark. 2005). First, the estate can maintain a survival action under Arkansas Code Annotated section 16-62-101 for claims the decedent personally could have brought against a tortfeasor had death not occurred. See id. Second, the decedent's beneficiaries may bring a wrongful death action for their own injuries caused by the tortfeasor. See id.; Ark. Code Ann. § 16-62-102. Further, in Arkansas, survival claims and wrongful death claims are "typically brought by the personal representative of the decedent and joined in one action." Howard W. Brill, Arkansas Law of Damages § 34.1 (6th ed. 2014) (citing Dawson v. Gerritsen, 748 S.W.2d 33, (Ark. 1988)). Unlike recoveries in survival actions, the Arkansas legislature has seen fit to protect wrongful death recoveries from the grasp of creditors: "No part of any recovery referred to in this section shall be subject to the debts of the deceased or become, in any way, a part of the assets of the estate of the deceased person." Ark. Code Ann. § 16-62-102(e). The reasoning for this is quite logical. Survival actions pursue claims personal to the decedent[1] and, thus, those recoveries should also be subject to the decedent's debts. Wrongful death suits, on the other hand, seek relief for the beneficiaries' own injuries[2] and, as such, that recovery rightfully forms no part

---

[1]Elements of such damages include, inter alia, the decedent's medical expenses, lost earnings prior to death, and pain and suffering. Brill, supra, § 34.2. "Apart from the personal injury action, the administrator may assert any claim that the decedent could have asserted if he had lived." Id.

[2]Recovery for wrongful death is intended to compensate the statutory beneficiaries for pecuniary losses—"defined as the present value of the benefits, including money, goods, and services, that the decedent would have contributed to the statutory beneficiaries if he had lived"—mental anguish, and loss of consortium. Brill, supra, §§ 34.4, 35.5.

of the decedent's estate. Therefore, because application of Tennessee law in this instance "contravene[s] the established policy" of Arkansas, I believe this factor weighs in favor of applying Arkansas law. Sutherland, 467 S.W.2d at 726.

Finally, the fourth factor—advancement of the forum's interest—favors application of Arkansas law. Analysis of this factor "requires the court to identify the factual connections linking the case to the forum state and then determine whether those facts implicate state policies that would justify application of forum law to the particular issue." 2 Newbern et al., supra; see also Schubert, 201 S.W.3d at 923. The Arkansas contacts relevant to this action are as follows: The accident giving rise to the wrongful death occurred there. The decedent was domiciled there. The estate was opened there. The probate court appointed an administrator to pursue survival and wrongful death claims there and, in the absence of outstanding claims against the estate or medical liens filed pursuant to Arkansas law, determined that the $700,000 offer was a "full and final settlement of any and all claims arising under the Arkansas Wrongful Death Act." These facts clearly implicate Arkansas's policy against subjecting wrongful death recoveries to claims by creditors. See Ark. Code Ann. § 16-62-102(e). "Once a settlement is obtained, subsection (e) declares that the settlement proceeds do not become assets of the decedent's estate . . . . Instead, the proceeds of a wrongful-death action are for the sole benefit of the statutory beneficiaries and may not be used to pay off debts of the estate." Douglas, 983 S.W.2d at 396.

The majority correctly notes that an Arkansas Court of Appeals decision—Mid-South Adjustment Co. v. Estate of Harris, 189 S.W.3d 518, 520 (Ark. Ct. App. 2004)—upheld a probate court's decision that allocated 100% of a settlement to recovery for wrongful death. But the majority then goes on to conclude that "the court did not identify a strong Arkansas public policy in favor of the allocation procedure." The majority reasons that the Arkansas legislature has not spoken to the precise issue and that the dissenting judges in Mid-South Adjustment noted tension

-14-

between Arkansas probate and wrongful-death laws. However, the Arkansas legislature has spoken on the issue—it has clearly stated that "[n]o *part of any recovery* referred to in this section shall be subject to the debts of the deceased or become, *in any way*, a part of the assets of the estate of the deceased person." Ark. Code Ann. § 16-62-102(e) (emphasis added). Thus, whether Mid-South Adjustment identified a strong public policy is beside the point because the State of Arkansas has a clear policy against subjecting wrongful death recoveries to claims by the decedent's creditors.

Moreover, the primary concern noted by the dissenters in Mid-South Adjustment involved the fact that the estate was settled and closed without notice to the creditors. See 189 S.W.3d at 521 (Robbins, J., dissenting). That concern is entirely absent here. The Med concedes that it had notice of the probate proceedings by April of 2011. As this is six months before the estate was closed, the Med had ample time to take action in Arkansas by filing its lien there or filing a claim against the estate, either of which would have entitled it to more notice. Significantly, in its September order approving the settlement, the Monroe County Circuit Court sitting in probate noted that no medical lien had been filed in Arkansas and that all claims against the estate had been paid. Instead, the Med filed the lien in Tennessee and then waited until August of 2013—more than two years after the estate was closed—to instigate the present action.

Because I believe all three applicable factors favor the application of Arkansas law, I respectfully dissent. I would affirm the district court's determination that Arkansas substantive law applies to the problem at issue.

_____

-15-