COLLOTON, Circuit Judge.
Shelby County Health Care Corporation, doing business as Regional Medical Center (“The Med,” for short), seeks relief for alleged impairment of a hospital lien. The district court dismissed The Med’s claim on the ground that it was barred by the Rooker-Feldman doctrine and, alternatively, that it failed under Arkansas law. We conclude that the claim is not barred by Rooker-Feldman, and that Tennessee law should apply, so we vacate the district court’s order and remand for further proceedings.
I.
The hospital lien in question arose from treatment that John Smiley received at The Med in Memphis, Tennessee, from February 18, 2009, when he was involved in an automobile accident, until March 6, 2009, when he died of his injuries. The Med promptly filed a hospital lien for Smiley’s medical bills pursuant to the Tennessee Hospital Lien Act in the Shelby County Circuit Court in Tennessee. Tenn. Code Ann. § 29-22-101. The Med mailed a copy of the hospital lien to the attorneys for Smiley’s estate.
Barbara Ford was appointed administrator of Smiley’s estate by an Arkansas circuit court. Ford negotiated a settlement with the tortfeasor’s insurer, Southern Farm Bureau Casualty Insurance Company. As part of the settlement negotiations, Ford sent to the insurer Smiley’s hospital bill and records from The Med documenting Smiley’s pain and suffering. The insurer, along with its insured Aaron Medford, and Medford’s employer Medford Farm Partnership, settled with Ford for $700,000. The administrator of the estate allocated the entire $700,000 to recovery for wrongful death and none to the recovery of compensatory damages for medical services and other expenses.
In September 2010, the settling parties (which did not include The Med) memorialized the agreement in an Arkansas probate court judgment that purported to extinguish any outstanding liens. The Med learned of the probate court judgment by April 2011, but did not seek to intervene in the proceedings. The probate court closed Smiley’s estate on September 16, 2011.
*840 The Med sued the settling parties to recover $355,364.16 in damages for the impairment of its hospital lien. The district court granted summary judgment for the defendants on the ground that The Med failed to enforce its lien by neglecting to file it in the Arkansas probate court. The Med appealed, and this court reversed, concluding that the district court misconstrued The Med’s claim as one for lien enforcement rather than lien impairment. Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co., 798 F.3d 686, 689 (8th Cir. 2015). We remanded for the district court to address, among other questions, whether Arkansas law or Tennessee law applied to The Med’s lien impairment claim. Id. at 689-90.
On remand, the district court again granted summary judgment for the settling parties. The court first ruled that the Rooker-Feldman doctrine barred The Med’s claims. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Alternatively, the court reasoned that Arkansas’s choice-of-law rules called for the application of Arkansas law, and that The Med’s claim failed under Arkansas law. The court concluded that The Med did not properly perfect its lien under Arkansas law, and that even if the lien were perfected, it would be unenforceable because Arkansas law prevents a hospital lien from attaching to a wrongful death recovery.
II.
We consider first the district court’s ruling that it lacked jurisdiction. In concluding that The Med’s claim “appears to be barred by the Rooker-Feldman doctrine,” the district court reasoned that “[t]o now find that there was a valid, enforceable lien would effectively reverse the decision made by the Arkansas probate court.” The court explained that the probate court found that The Med’s lien was void and not enforceable in Arkansas, while The Med now alleges that the defendants impaired a valid lien.
The Rooker-Feldman doctrine is confined to “cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.” Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The doctrine does not apply here, because The Med was not a “state-court loser.” The Med was not a party to the state-court probate proceedings. Whatever narrow application the Rooker-Feldman doctrine might have to de facto appeals by non-parties is hot germane here, where The Med has no relationship to the parties in probate court. Cf. Lance v. Dennis, 546 U.S. 459, 466 n.2, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (per curiam) (reserving judgment on whether Rooker-Feld-man applies where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent).
The district court relied on Lemonds v. St. Louis County, 222 F.3d 488 (8th Cir. 2000), which stated a broader view of the Rooker-Feldman rule: “The Rooker-Feld-man doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions.” Id. at 492. Starting from that premise, Lemonds said the fact that federal-court plaintiffs were not parties to an earlier state-court lawsuit “does not automatically preclude a Rooker-Feld-man bar.” Id. at 495. The court ruled that non-parties who could have pursued a claim in state court were barred by Rook-er-Feldman from proceeding in federal *841 court when “the entire upshot of a favorable decision” would have been “to unwind the decision of the state court.” Id. at 496.
Lemonds, however, has been superseded by the Supreme Court’s clarification of the Rooker-Feldman doctrine. In Exxon Mobil, the Court observed that “the doctrine has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases.” 544 U.S. at 283, 125 S.Ct. 1517. The Court emphasized that the doctrine applies only to claims brought by “state-court losers” and “does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.” Id. at 284, 125 S.Ct. 1517. In Lance, the Court explained that “[t]he Rooker-Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment.” 546 U.S. at 466, 126 S.Ct. 1198. To apply Rooker-Feldman here to a non-party who had an opportunity to intervene in state-court proceedings would echo the pre-Exxon Mobil lower-court rulings that expanded the doctrine too far.
In this case, moreover, The Med does not seek to reverse the order of the Arkansas probate court. The Med acknowledges that it could not seek a judgment directly against the proceeds of the personal injury settlement; those proceeds were awarded to Ford. In this case, The Med asserts that the probate court’s order is evidence that the settling parties impaired The Med’s hospital lien, and The Med seeks a judgment against Ford and the other settling parties. The Rooker-Feldman doctrine thus does not bar The Med’s claim.
III.
The district court ruled alternatively that Arkansas law applies to the dispute between the parties, and that The Med’s claim fails under Arkansas law. On appeal, the parties debate whether Arkansas law or Tennessee law should apply.
Federal jurisdiction over this case is based on diversity of citizenship, so we apply the choice-of-law rules of Arkansas, the forum State, to determine which law governs the dispute. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Arkansas law, the framework for deciding the choice-of-law question depends on the type of claim involved. A contract claim triggers different analysis than a tort claim.
The Med argues that the case raises an issue in contract, because hospital liens arise from an express or implied contract that is formed when the hospital provides emergency medical services. See Midwest Neurosurgery, P.C. v. State Farm Ins. Cos., 268 Neb. 642, 686 N.W.2d 572, 578 (2004). But the Arkansas Supreme Court, in considering its own State’s hospital lien statute, has not accepted that characterization. In Stuttgart Regional Medical Center v. Cox, 343 Ark. 209, 33 S.W.3d 142 (2000), the court rejected a patient’s argument that a hospital enforcing its lien brought an action that “sounded in contract” based on agreements with a hospital; instead, the hospital’s “sole cause of action was to enforce its lien.” Id. at 145.
Here, of course, the action is not to enforce a lien, but to seek relief for impairment of a lien. Ford, citing Lane v. Celadon Trucking, Inc., 543 F.3d 1005 (8th Cir. 2008), argues that the action raises an issue in tort. Lane involved a worker’s compensation subrogation claim in which an employer paid worker’s compensation benefits to an injured employee. The employer had negotiated both an employment *842 agreement and a settlement agreement in which the employer retained its statutory rights to recover amounts paid to the employee by third parties based on the injury. The employer then asserted a worker’s compensation lien on any recovery the employee might receive from the tortfeasor who caused the injury, and later attempted to recover proceeds of a settlement that the employee received from the tortfeasor. In determining the type of action involved for purposes of choice-of-law analysis, this court concluded that despite the agreements and the lien, “the issue was not simply one of contract because it implicated the tort aspects of the plaintiffs recovery for his personal injuries.” Id. at 1009.
Although there are differences between a subrogation claim to recover on a worker’s compensation lien and a claim alleging impairment of a hospital lien, see Nat’l Ins. Ass’n v. Parkview Mem’l Hosp., 590 N.E.2d 1141, 1145 (Ind. Ct. App. 1992), we think the dispute between the parties in this case is still best characterized as raising an issue in tort. The relevant tort here is the alleged impairment of the hospital lien secured by The Med. A lien is an interest, in another’s property. A claim of lien impairment is an assertion that the defendants interfered with this property interest, a wrong analogous to the common-law tort of conversion. See Unigard Ins. Co. v. Tremont, 37 Conn.Supp. 596, 430 A.2d 30, 32-33 (1981); Rew v. Maynes, 147 Iowa 15, 125 N.W. 804, 804 (1910). We therefore expect that the Arkansas courts are likely to treat a claim of lien impairment as raising an issue in tort rather than contract, and we proceed with the choice-of-law analysis accordingly.
Once upon a time, Arkansas courts resolving choice-of-law questions in tort cases followed the rule of lex loci delicti: apply the law of the place where the tort was committed. E.g., Wheeler v. Sw. Greyhound Lines, Inc., 207 Ark. 601, 182 S.W.2d 214, 215 (1944). More recently, however, the Arkansas Supreme Court has “evolved” to consider the five choice-influencing factors identified by Professor Robert Leflar “to soften the formulaic application of lex loci delicti.” Schubert v. Target Stores, Inc., 360 Ark. 404, 201 S.W.3d 917, 922 (2005). As we understand current Arkansas law, the state supreme court considers first which State has the most significant relationship to the action and the parties, and then analyzes the Leflar factors: (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum’s governmental interests, and (5) application of the better rule of law. Ganey v. Kawasaki Motors Corp., U.S.A., 366 Ark. 238, 234 S.W.3d 838, 846-47 (2006).
In determining which State has the most significant relationship to the action and parties, Arkansas courts examine the contacts that are most relevant in the particular case. Here, the most significant contacts do not weigh clearly in favor of either Arkansas or Tennessee. The medical bills that formed the basis for the hospital lien were incurred in Tennessee. The Med filed its hospital lien in Tennessee, would have received funds based on the lien in Tennessee, and thus felt the harm from any impairment of the lien in Tennessee. But the settlement agreement and corresponding probate order that allegedly impaired the lien were filed in Arkansas. The parties’ domiciles do not tip the balance. The Med is a Tennessee corporation that conducts business exclusively in Tennessee. Ford is domiciled in Virginia. The insurer is incorporated in Mississippi and does business in several states, including Arkansas, but not Tennessee. Medford is an Arkansas resident, employed by Medford Farm Partnership, *843 which operates in Arkansas. That Mr. Smiley’s automobile accident occurred in Arkansas carries little weight in the analysis. The relevant wrong here is alleged impairment of the lien, not negligent operation of a vehicle, and the factors described above' are most significant in the lien impairment action.
So we turn to the Leflar factors, three of which are most pertinent here. The first factor is predictability of results. “The consideration here is the idea that a decision following litigation on a given set of facts should be the same regardless of where the litigation occurs in order to prevent forum shopping.” Schubert, 201 S.W.3d at 922. We think this factor favors Tennessee law. Judge Moody was quite right in State Farm Mut. Auto. Ins. Co. v. Shelby Cty. Health Care Corp., No. 3:10CV00169, 2011 WL 5508854, at *3 (E.D. Ark. Nov. 10, 2011), that “[f]orcing The Med, or any other regional hospital, to predict [in] which state an insurer would administer the claims of Med patients would certainly result in unpredictable results.” Applying Tennessee law to hospital hens filed in Tennessee creates consistent outcomes for patients who live in different States when they seek medical care at the same facility in Tennessee. Forum-shopping might not be a concern in the case of deceased patients, because probate law restricts where an estate could settle a claim. But many patients live beyond their stay at The Med, and uniform application of Tennessee law prevents forum shopping in hen impairment actions involving former patients. The choice of law should not depend on whether a patient has died.
The second Leflar factor — the maintenance of interstate and international order — also favors Tennessee law. This factor focuses on whether one State’s law would “manifest disrespect for [another state’s] sovereignty or impede the interstate movement of people and goods.” Whitney v. Guys, Inc., 700 F.3d 1118, 1125 (8th Cir. 2012) (alterations in original). The record reflects that The Med is the only Level 1 Trauma Center within a 150-mile radius of Memphis, and the facility renders life-saving trauma care to hundreds of Arkansas residents per year. Arkansas itself encourages hospitals to provide emergency services to its residents, as illustrated by its own hospital hen statute. Ark. Code Ann. § 18-46-104. But application of Arkansas law here would be disruptive to interstate order, because it would deprive The Med of compensation for emergency care administered to severely injured Arkansans.
Under the fourth Leflar factor— the advancement of the forum’s interest— we determine the forum’s interest by examining its contacts with the case. Schubert, 201 S.W.3d at 923. Arkansas’s primary contact with this hen impairment action is that an Arkansas probate court order memorialized the settlement that The Med alleges impaired its hen. Arkansas’s hospital hen statute reflects the State’s general interest in encouraging hospitals to provide emergency services to its residents. See Ark. Code Ann. § 18-46-104. In the case of a wrongful death settlement, however, Arkansas law prevents a third party from attaching a hen to a wrongful-death recovery. Ark. Code Ann. § 16-62-102(e). And according to a divided opinion of the Arkansas Court of Appeals, Arkansas law permits the administrator of an estate like Ford to allocate all of a settlement in a wrongful-death and surviv- or action to the wrongful-death aspect of the action, and none to medical expenses that would benefit the creditors of the estate. Mid-South Adjustment v. Estate of Harris, 87 Ark. App. 139, 189 S.W.3d 518, 520 (2004).
*844 Because the settlement here was allocated entirely to a wrongful-death recovery, the fourth factor concerning advancement of the forum’s interest arguably points to Arkansas law. But Arkansas’s statutory policy preventing creditors from attaching liens to wrongful-death recoveries is implicated as to the full recovery here only because Mid-South Adjustment allows an estate’s administrator unilaterally to allocate a settlement to avoid the claims of an estate’s creditors. The Arkansas legislature has not spoken to the allocation issue, and given the concerns expressed by the dissenting judges about tension between the State’s probate laws and the wrongful-death statute, id. at 520-22 (Robbins, J., dissenting), we are not confident that the Arkansas Supreme Court would agree with the intermediate court. Even taking the court of appeals decision as the best indicator of current Arkansas law, the court did not identify a strong Arkansas public policy in favor of the allocation procedure.
In any event, we are not convinced that the forum’s interest outweighs the concerns previously expressed about forum shopping and the maintenance of interstate order that favor application of Tennessee law. The Arkansas Supreme Court, speaking of interstate order, has acknowledged that “[djeference to sister state law in situations in which the sister state’s substantial concern with a problem gives it a real interest in having its law applied, even though the forum state also has an identifiable interest, will at times usefully further this part of the law’s total task.” Gomez v. ITT Educ. Servs., 348 Ark. 69, 71 S.W.3d 542, 547 (2002) (quoting Robert A. Leflar, American Conflicts of Law § 104, at 208 (3d ed. 1977)). We believe that this case presents such an occasion.
Having considered both which State has the most significant relationship to the parties and the action, and Professor Lef-lar’s choice-influencing factors, we conclude that Tennessee law should apply to The Med’s lien impairment claim. We therefore reverse the district court’s order granting summary judgment in favor of the defendants and remand the case for further proceedings in accordance with this opinion.