Juan GOMEZ, Individually and on Behalf of the
Estate of Herminia Espinoza Gomez, *Deceased*,
and Juan Castorena, Jesus Castorena,
Valentin Castorena, and Gilberto Castorena
*v.* ITT EDUCATIONAL SERVICES, INC.,
*d/b/a* ITT Technical Institute

01-1089                                                71 S.W.3d 542

Supreme Court of Arkansas
Opinion delivered April 4, 2002

*Henry & Cullen LLP,* by: *Tim Cullen*; and *Law Offices of Bruce Flint, P.C.,* by: *Bruce Flint,* for appellants.

*Rose Law Firm,* by: *Richard T. Donovan,* for appellee.

Tom Glaze, Justice. Herminia Gomez, the wife of appellant Juan Gomez, was murdered in Dallas County, Texas, on March 11, 1998, by Bobby Turner, a recruiter employed by ITT Educational Services, Inc., d/b/a ITT Technical Institute ("ITT Technical"). On February 18, 2000, Mrs. Gomez's family filed a wrongful-death lawsuit in Dallas County, Texas, purporting to name ITT Technical as defendant, and alleging that ITT Technical had negligently hired Turner without discovering his extensive criminal record. However, the Gomez suit named the wrong defendant, and actually sued a company called "ITT Teleco," which is unrelated to ITT Technical. On July 7, 2000, more than two years after the murder, the Gomezes amended the original

complaint to add ITT Technical as a defendant and dismiss ITT Teleco; ITT Technical moved for summary judgment on the grounds that Texas' two-year statute of limitations for wrongful-death actions had already expired. The Gomezes took a voluntary nonsuit in the Dallas County case before an adverse judgment could be entered.

ITT Technical operates schools in 27 states, including Arkansas. On February 15, 2001, within three years of Herminia's murder, the Gomez family filed a wrongful-death action in Pulaski County Circuit Court, again alleging ITT Technical's negligent hiring of Turner. ITT Technical answered and admitted jurisdiction and venue. ITT Technical then filed a motion for summary judgment, arguing that, applying conflict-of-law considerations, Texas' shorter two-year statute of limitations should apply to bar the action. After a hearing on June 26, 2001, the Pulaski County court granted ITT Technical's motion for summary judgment. From the order granting that motion, the Gomezes bring the instant appeal, arguing that the trial court erred in applying the shorter, two-year statute of limitations instead of Arkansas' three-year statute of limitations.

The facts in this case are undisputed; every relevant action took place in the State of Texas, and every party is a resident of that state. The sole question on appeal is whether Texas' or Arkansas' statute of limitations should apply. Arkansas's wrongful death act is codified at Ark. Code Ann. § 16-62-102 (Supp. 2001); this statute provides that "[e]very action authorized by this section shall be commenced within three (3) years after the death of the person alleged to have been wrongfully killed." § 16-62-102(c)(1). In Texas, the statutory provision allowing a cause of action for wrongful death is Tex. Civ. Prac. & Rem. Code Ann. § 17.002 (1997), and § 16.003(b) states that "[a] person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death."

■ ■ The Gomezes contend that statutes of limitation are procedural in nature, and as such, the Arkansas court should have applied Arkansas's own procedural law. Further, he argues that Arkansas has abandoned the rule of *lex loci delicti*, or the law of the

place where the wrong took place, and has instead adopted a modified rule, as set out in *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977). With respect to his first argument, we note that statutes of limitations are indeed generally considered to be procedural in nature. *See, e.g., Bodiford v. Bess*, 330 Ark. 713, 956 S.W.2d 861 (1997). However, this court has also held that statutes of limitations are to be distinguished from statutes which create a right of action not existing at common law and restrict the time within which action may be brought to enforce the right. *Boatman v. Dawkins*, 294 Ark. 421, 743 S.W.2d 800 (1988). Although the general rule is that a true statute of limitations extinguishes only the right to enforce the remedy and not the substantive right itself, the limitation of time for commencing an action under a statute creating a new right enters into and becomes a part of the right of action itself and is a limitation not only of the remedy but of the right also; the right to recover depends upon the commencement of the action within the time limit set by the statute, and if that period of time is allowed to elapse without the institution of the action, the right of action is gone forever. *Id.* at 424 (citing 51 Am. Jur. 2d *Limitation of Actions* 15). Thus, time limitations which are set out in a statute creating a right — such as the statute of limitations contained within the wrongful-death act — are substantive, not procedural in nature.

A leading author on the subject of conflicts of laws has similarly set forth the following well-settled exception to the traditional rule that forum law governs statutes of limitations:

> When a statute which creates a right specifies that the existence of its new creation shall continue only for a limited length of time, there is no existent right beyond what the statute has created, *and no other state, even though its statute would allow a longer period for such suits, will entertain an action on a right which has ceased to exist.* Death acts are characteristic in this respect, since the action for wrongful death is in the states wholly statutory, and the death acts often state specifically that actions thereunder must be brought within a named time after the death. *Thus a forum state will refuse to entertain an action for wrongful death brought later than the one-year period allowed for the bringing of such actions in the state where the tort occurred, even though the two-year period set by the forum's wrongful death act has not yet passed.*

Robert A. Leflar, *American Conflicts Law* § 127, at 254 (3d ed. 1977) (emphasis added).

■ Other authorities offer similar instructions. The Restatement (Second) of Conflict of Laws § 143, dealing with foreign statutes of limitations barring a right, provides that "[a]n action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy." The commentary to this section states that "it is for the forum courts to determine whether a foreign statute of limitations bars the right and not merely the remedy. The almost invariable prerequisite is that the liability sought to be enforced must have been created by statute. Once this requirement has been met, the usual test is whether, in the opinion of the forum, the limitation provision was directed to the right 'so specifically as to warrant saying that it qualified the right.'" Section 143, cmt. c (citing *Davis v. Mills*, 194 U.S. 451 (1904)). The most common situation where this occurs, comment c goes on to read, "is when a statute creates but a single right of action and also contains a provision limiting the time in which actions under the statute may be brought. Wrongful death statutes are typical examples of statutes of this sort." *Id.*

■ Thus, Arkansas must determine whether Texas's wrongful-death statute of limitations bars the right and not merely the remedy. The Texas Court of Appeals has held that, "with statutorily created actions, time limits are not procedural statutes of limitations, but are substantive qualifications and conditions restricting the right to bring wrongful death actions." *Trunkhill Capital, Inc. v. Jansma*, 905 S.W.2d 464 (Tex. App.—Waco 1995); *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789 (Tex. 1974). Clearly, then, the trial court here did not err in determining that Texas law should apply to bar Gomez's action.

■ Gomez offers an additional argument, however, and suggests that this court should apply the five "choice influencing considerations" we utilized in *Wallis, supra.* These five factors are as follows: 1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum's governmental interests; and 5) appli-

cation of the better rule of law. *Wallis*, 261 Ark. at 629.; *see also* Leflar, §§ 103-107, at 205-15. Gomez further contends that the *Wallis* court impliedly overruled and abandoned the *lex loci delicti* rule that this court had consistently applied up until the *Wallis* case. *See McGinty v. Ballentine*, 241 Ark. 533, 408 S.W.2d 891 (1966); *Wheeler v. Southwestern Greyhound Lines, Inc.* 207 Ark. 601, 128 S.W.2d 214 (1944); *Earnest v. St. Louis, Memphis, & S.E. Railway Co.*, 87 Ark. 65, 112 S.W. 141 (1908).

In *Schlemmer v. Fireman's Ins. Co.*, 292 Ark. 344, 730 S.W.2d 217 (1987), this court noted that it had adopted the Leflar choice-influencing approach in *Wallis* and had continued to use the approach. *Schlemmer*, 292 Ark. at 346 (citing *Williams v. Carr*, 263 Ark. 326, 565 S.W.2d 400 (1978)). However, neither *Schlemmer* nor *Wallis* explicitly overruled *McGinty* and the other earlier cases applying the more mechanical *lex loci delicti* rule. Nor do we find it necessary to overrule *McGinty* and its progeny here. Instead, the adoption of the Leflar factors in *Wallis* and subsequent cases appears to be merely a softening of what previously had been a rigid formulaic application of the former rule of law.

This conclusion is consistent with Leflar's commentary on the issue. In *American Conflicts Laws*, Leflar states that these five considerations "do not furnish rules of thumb for the decision of every conflicts case. *The considerations tie in with the common law as it has already developed, and they assume that the mass of developed common law on choice of law will continue to serve its precedential function.*" Leflar, § 108, at 215 (emphasis added). Leflar continues as follows:

> The function of the considerations should be to assure a continuing reexamination of precedents, a readiness to lay aside old mechanical rules that turn out to be without support in the considerations or that contradict them, *yet at the same time to promise a reaffirmation of old rules, or at least of old results, that conform to and implement the considerations.*

*Id.* at 216 (emphasis added).

■ However, even applying these five considerations to the case before us, we would still reach the same conclusion.[1] The first factor is predictability of results. Leflar noted that this consideration "includes the . . . ideal that the decision in litigation on a given set of facts should be the same regardless of where the litigation occurs, so that forum-shopping will benefit neither party." Leflar, § 103, at 205. It cannot be denied that the Gomez family engaged in forum-shopping in this case, as they chose a nearby state with a wrongful death act that essentially differed from Texas' only in the amount of time in which a suit could be brought. Otherwise, however, the issue of predictability of results is not necessarily a paramount concern in this case, as the wrongful-death statutes provide a similar remedy for plaintiffs (but for the statute of limitations).

■ The second factor, maintenance of interstate and international order, is similarly not of great concern here, because residents of Texas are not likely to venture to Arkansas to engage in tortious conduct, nor are potential Arkansas defendants generally going to go to Texas to cause a wrongful death in order to avail themselves of the shorter statute of limitations. However, Leflar notes that "[d]eference to sister state law in situations in which the sister state's substantial concern with a problem gives it a real interest in having its law applied, even though the forum state also has an identifiable interest, will at times usefully further this part of the law's total task." Leflar, § 104, at 208. Applying this consideration further militates in favor of applying Texas law, because that is the state with the more "substantial concern with [the] problem," as every actor and event is situated in that state.

■ The third consideration, simplification of the judicial task, is ordinarily not a paramount consideration, because the "law does not exist for the convenience of the court that administers it, but for society and its members." Leflar, § 105, at 208. Dr. Leflar

---

[1] Leflar noted that not every case will involve a consideration of each of the five factors, citing *Clark v. Clark*, 107 N.H. 851, 222 A.2d 205 (1966) (wherein the New Hampshire Supreme Court commented that several of the factors were "largely irrelevant"). Leflar, § 108, at 217. Likewise, in *Wallis*, our court relied on a Mississippi case that looked only to the last two factors. *Wallis*, 261 Ark. at 629 (citing *Mitchell v. Craft*, 211 So. 2d 509 (Miss. 1968)).

further observed that, where the out-of-state rule is outcome-determinative and easy to apply, "there is no good reason why the possibility of importing it as part of the out-of-state law governing the case should not be seriously considered." *Id.* at 209. Here, of course, the application of Texas law is outcome-determinative and easy to apply.

■■■ The fourth factor, however, is the advancement of the forum's governmental interests. This consideration weighs heavily in our analysis, because of the tangential nature of the parties' connections with this state. Simply put, Arkansas has few, if any, governmental interests in this case. As pointed out repeatedly above, every party to this action is a resident of Texas. The decedent lived in Texas; her assailant lived in Texas; her family lives in Texas; and the murder occurred in Texas. Applying Arkansas law to this case would do little or nothing to advance Arkansas's governmental interests, as no citizen of Arkansas is involved.

■■■ The final consideration is the "better rule of law." The Arkansas wrongful-death statute and the Texas wrongful-death statute both provide that a person is liable for actual damages arising from an injury that causes an individual's death. *See* Ark. Code Ann. § 16-62-102; Tex. Civ. Proc. & Rem. Code 71.002. Neither offers a "better" remedy than the other, as they both provide the same redress for the same wrong; the only difference is in the time period in which such a cause of action must be brought. The Gomez family, of course, argues that the longer statute of limitations makes Arkansas's the better rule of law. However, Arkansas simply does not have a sufficient relationship to the parties or to the injury that would cause this final consideration to be the controlling factor. The Restatement provides that "[i]n an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties *unless, with respect to the particular issue, some other state has a more significant relationship . . .* to the occurrence and the parties, in which event the local law of the other state will be applied." *Restatement (Second) of Conflicts of Law* § 175 (emphasis added). Clearly, Texas has a more significant relationship with the parties and with the issues, and Texas law should be applied in this case.

We conclude that the trial court in this matter correctly applied Texas law and determined that the two-year statute of limitations in that state barred the Gomezes' action. The trial court's grant of summary judgment to ITT Technical is, therefore, affirmed.