SHEPHERD, Circuit Judge,
dissenting.
Until now, the commonplace procedure where an Arkansas resident is fatally injured in an accident that occurs in Arkansas is that an Arkansas probate court appoints an administrator in an Arkansas county for the purpose of bringing a wrongful death claim. After that claim is settled in an Arkansas probate court, there has been no question that the proceeds from that action do not become a part of the assets of the estate and, therefore, are not subject to the debts of the deceased. Thus, the court defies controlling Arkansas law by holding that an out-of-state medical care provider — who is located less than 100 miles away and has actual notice of the proceedings, but nevertheless fails to file a claim against the estate, perfect an Arkansas medical lien, or otherwise appear in the probate case — is entitled to proceeds from a wrongful death action. Accordingly, I respectfully dissent.
Accordingly, although I agree with the majority’s determination that the Rooker-Feldman doctrine does not bar the present action, I cannot agree with the outcome of its conflict of laws analysis. The state, in Arkansas Code Annotated section 16-62-102(e), made unmistakably clear its policy goals with regard to the question of whether damages recovered by survivors of the deceased for wrongful death may be claimed by creditors by stating that “[n]o part of any recovery referred to in this section shall be subject to the debts of the *845 deceased or become, in any way, a part of the assets of the estate of the deceased person.” Further, this policy has been reiterated and applied in a number of subsequent state court decisions. See, e.g., Douglas v. Holbert, 335 Ark. 305, 983 S.W.2d 392, 396 (1998).
I agree with the majority’s conclusion that this action sounds in tort rather than in contract. See Stuttgart Reg’l Med. Ctr. v. Cox, 343 Ark. 209, 33 S.W.3d 142, 145 (2000). Thus, Arkansas courts first determine which state has the most significant relationship to the parties and the litigation by examining the contacts relevant to the dispute. Ganey v. Kawasaki Motors Corp., U.S.A., 366 Ark. 238, 234 S.W.3d 838, 847 (2006). Next, the courts consider the lex loci delicti doctrine and Professor Leflar’s five “choice-influencing considerations.” Id. (internal quotation marks omitted). Those factors are “1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum’s governmental interests; and 5) application of the better rule of law.” Gomez v. ITT Educ. Servs., Inc., 348 Ark. 69, 71 S.W.3d 542, 546 (2002).
Assuming that an examination of the relevant contacts does not favor the application of either state’s law, I dissent from the majority’s conclusion that factors one, two, and four indicate that Tennessee law should apply. The first factor — predictability of results — weighs in favor of applying Arkansas law. “The consideration here is the ideal that a decision following litigation on a given set of facts should be the same regardless of where the litigation occurs in order to prevent forum shopping.” Schubert v. Target Stores, Inc., 360 Ark. 404, 201 S.W.3d 917, 922 (2005). Simply put, forum shopping is not a legitimate concern in a probate case such as this when there is only one state in which the estate could be settled. While the majority correctly observes that this could potentially be a concern when a patient does not pass away during the course of his treatment, the majority’s opinion loses sight of the fact that this is not what happened here.
The second factor — maintenance of interstate order — likewise favors application of Arkansas law. “When the forum has little or no interest in applying its own law, its parochial decision to do so anyway could adversely affect the smooth functioning of the federal system and lead to retaliation in future cases by courts in the other state with a substantial interest in having its law applied.” 2 David Newbern et al., Arkansas Civil Practice & Procedure § 6:6 (5th ed. 2010). It is for this reason that the state supreme court has “note[d] that ‘[djeference to sister state law in situations in which the sister state’s substantial concern with a problem gives it a real interest in having its law applied, even though the forum state also has an identifiable interest, will at times usefully further this part of the law’s total task.’ ” Gomez, 71 S.W.3d at 547 (second alteration in original) (quoting Robert A. Leflar, American Conflicts of Law § 104, at 208 (3d ed. 1977)). On the other hand, “where the enforcement of the foreign law would contravene the established policy of the state of the forum, the law of the forum governs.” Sutherland v. Ark. Dep’t of Ins., 250 Ark. 903, 467 S.W.2d 724, 726 (1971).
“Under current Arkansas law, when a person’s death is caused by the negligence of another, two causes of action arise.” Davis v. Parham, 362 Ark. 352, 208 S.W.3d 162, 167 (2005). First, the estate can maintain a survival action under Arkansas Code Annotated section 16-62-101 for claims the decedent personally could have brought against a tortfeasor had death not occurred. See id. Second, the decedent’s beneficiaries may bring a wrongful death ac *846 tion for their own injuries caused by the tortfeasor. See id.; Ark. Code Ann. § 16-62-102. Further, in Arkansas, survival claims and 'wrongful death claims are “typically brought by the personal representative of the decedent and joined in one action.” Howard W. Brill, Arkansas Law of Damages § 34.1 (6th ed. 2014) (citing Dawson v. Gerritsen, 295 Ark. 206, 748 S.W.2d 33, (1988)). Unlike recoveries in survival actions, the Arkansas legislature has seen fit to protect wrongful death recoveries from the grasp of creditors: “No part of any recovery referred to in this section shall be subject to the debts of the deceased or become, in any way, a part of the assets of the estate of the deceased person.” Ark. Code Ann. § 16-62-102(e). The reasoning for this is quite logical. Survival actions pursue claims personal to the decedent[1] and, thus, those recoveries should also be subject to the decedent’s debts. Wrongful death suits, on the other hand, seek relief for the beneficiaries’ own injuries [2] and, as such, that recovery rightfully forms no part of the decedent’s estate. Therefore, because application of Tennessee law in this instance “contravene[s] the established policy” of Arkansas, I believe this factor weighs in favor of applying Arkansas law. Sutherland, 467 S.W.2d at 726.
Finally, the fourth factor — advancement of the forum’s interest — favors application of Arkansas law. Analysis of this factor “requires the court to identify the factual connections linking the case to the forum state and then determine whether those facts implicate state policies that would justify application of forum law to the particular issue.” 2 Newbern et al., supra; see also Schubert, 201 S.W.3d at 923. The Arkansas contacts relevant to this action are as follows: The accident giving rise to the wrongful death occurred there. The decedent was domiciled there. The estate was opened there. The probate court appointed an administrator to pursue survival and wrongful death claims there and, in the absence of outstanding claims against the estate or medical liens filed pursuant to Arkansas law, determined that the $700,000 offer was a “full and final settlement of any and all claims arising under the Arkansas Wrongful Death Act.” These facts clearly implicate Arkansas’s policy against subjecting wrongful death recoveries to claims by creditors. See Ark. Code Ann. § 16-62-102(e). “Once a settlement is obtained, subsection (e) declares that the settlement proceeds do not become assets of the decedent’s estate.... Instead, the proceeds of a wrongful-death action are for the sole benefit of the statutory beneficiaries and may not be used to pay off debts of the estate.” Douglas, 983 S.W.2d at 396.
The majority correctly notes that an Arkansas Court of Appeals decision—Mid-South Adjustment Co. v. Estate of Harris, 87 Ark. App. 139, 189 S.W.3d 518, 520 (2004)—upheld a probate court’s decision that allocated 100% of a settlement to recovery for wrongful death.. But the majority then goes on to conclude that “the court did not identify a strong Arkansas public policy in favor of the allocation procedure.” The majority reasons that the Arkansas *847 legislature has not spoken to the precise issue and that the dissenting judges in Mid-South Adjustment noted tension between Arkansas probate and wrongful-death laws. However, the Arkansas legislature has spoken on the issue — it has clearly stated that “[n]o part of any recovery referred to in this section shall be subject to the debts of the deceased or become, in any way, a part of the assets of the estate of the deceased person.” Ark. Code Ann. § 16-62-102(e) (emphasis added). Thus, whether Mid-South Adjustment identified a strong public policy is beside the point because the State of Arkansas has a clear policy against subjecting wrongful death recoveries to claims by the decedent’s creditors.
Moreover, the primary concern noted by the dissenters in Mid-South Adjustment involved the fact that the estate was settled and closed without notice to the creditors. See 189 S.W.3d at 521 (Robbins, J., dissenting). That concern is entirely absent here. The Med concedes that it had notice of the probate proceedings by April of 2011. As this is six months before the estate was closed, the Med had ample time to take action in Arkansas by filing its lien there or filing a claim against the estate, either of which would have entitled it to more notice. Significantly, in its September order approving the settlement, the Monroe County Circuit Court sitting in probate noted that no medical lien had been filed in Arkansas and that all claims against the estate had been paid. Instead, the Med filed the lien in Tennessee and then waited until August of 2013 — more than two years after the estate was closed — to instigate the present action.
Because I believe all three applicable factors favor the application of Arkansas law, I respectfully dissent. I would affirm the district court’s determination that Arkansas substantive law applies to the problem at issue.

. Elements of such damages include, inter alia, the decedent’s medical expenses, lost earnings prior to death, and pain and suffering. Brill, supra, § 34.2. "Apart from the personal injury action, the administrator may assert any claim that the decedent could have asserted if he had lived.” Id.

. Recovery for wrongful death is intended to compensate the statutory beneficiaries for pecuniary losses — “defined as the present value of the benefits, including money, goods, and services, that the decedent would have contributed to the statutory beneficiaries if he had lived” — mental anguish, and loss of consortium. Brill, supra, §§ 34.4, 35.5.