Cite as 2021 Ark. App. 326

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-20-112

|  |  |
|---|---|
| IN THE MATTER OF THE ESTATE OF DAVID P. SHOCKLEY, DECEASED<br><br>TAMMY DAVIS AND ALICE BARCLAY<br>APPELLANTS<br><br>V.<br><br>GLENDA BASSETT<br>APPELLEE | **Opinion Delivered** September 8, 2021<br><br>APPEAL FROM THE BOONE COUNTY CIRCUIT COURT<br>[NO. 05PR-17-178]<br><br>HONORABLE DEANNA "SUZIE" LAYTON, JUDGE<br><br>REVERSED AMD REMANDED |

**KENNETH S. HIXSON, Judge**

This is a probate case. Appellants Tammy Davis and Alice Barclay contend that the trial court erred in denying their claim for a portion of wrongful-death settlement proceeds obtained by appellee Glenda Bassett in Glenda's capacity as executor of the estate of David Shockley. We reverse and remand for further proceedings.

David Shockley died on August 13, 2017, in a motor-vehicle accident on Interstate 40 West in Wheeler County, Texas. The accident occurred when a tractor-trailer traveling in front of Shockley's tractor-trailer crossed into the median, and upon reentering the highway, overturned on its left side, blocking both lanes. Shockley's tractor-trailer collided with the overturned tractor-trailer, causing a fire, and Shockley died in the wreckage.

Shockley was a resident of Boone County, Arkansas, and died testate. Shockley was unmarried and had no children. His only heirs were his three sisters: appellee Glenda Bassett and appellants Tammy Davis and Alice Barclay.[1] Shockley's will nominated Glenda as executor,[2] and the will bequeathed all of Shockley's estate to Glenda.

On August 17, 2017, Glenda filed a petition in the probate division of Boone County Circuit Court,[3] requesting that Shockley's will be admitted to probate and that Glenda be appointed as executor to administer the estate. The petition stated that Shockley's heirs are his three sisters, Glenda, Tammy, and Alice. On the same day, the trial court entered an order admitting the will to probate and appointing Glenda as executor. Letters testamentary were issued, authorizing Glenda to act as executor and to take possession of the estate's property as authorized by law. A notice was filed stating that Glenda had been appointed administrator of Shockley's estate and that all persons having claims against the estate must exhibit them within six months of first publication of the notice. The record, however, does not contain proof that this notice was published as required by Ark. Code Ann. § 28-40-111(a)(1)(A) (Repl. 2012). Nor was there any proof that a copy of the notice was served on each heir as required by Ark. Code Ann. § 28-40-111(a)(4)(A).

---

[1]Glenda and Alice reside in Arkansas, and Tammy resides in Missouri.

[2]We note that the pleadings filed in probate court inconsistently refer to Glenda as a "executor" and "executrix." For purposes of clarity and consistency we will use the descriptive term "executor."

[3]Unless otherwise noted, the term "trial court" as used in this opinion refers to the probate division of the Boone County Circuit Court.

Before summarizing the events that unfolded after Shockley's will was admitted to probate and Glenda appointed executor, it is important to understand the general topic of "wrongful-death actions." Unfortunately, over the years, litigants have used the generic label "wrongful-death actions" to describe all claims made by the decedent's representative arising out of a motor-vehicle accident. However, such a label is inaccurate and can lead to confusion in some cases. There are actually two different causes of action in these scenarios and the differences are important. The first cause of action is a *survival action* under Ark. Code Ann. § 16–62–101 (Repl. 2005). The second cause of action is a *wrongful-death action* under Ark. Code Ann. § 16–62–102 (Supp. 2019).

In the survival action under § 16–62–101, the *estate* may recover damages for things such as medical bills, conscious pain and suffering, funeral expenses, and loss-of-life damages. *See Durham v. Marberry*, 356 Ark. 481, 156 S.W.3d 242 (2004). Damages recovered under a survival action become an *asset of the estate* and are distributed under the terms of the decedent's will if the decedent died testate, as he did here.[4] *Id.* In the wrongful-death action under Ark. Code Ann. § 16–62–102(b), the wrongful-death action is brought by, and in the name of, the personal representative of the deceased person *on behalf of the statutory beneficiaries*.[5] Although the claim is brought by the personal representative of the estate, the

---

[4]If the decedent died intestate, the assets of the estate would pass under the laws of descent and distribution.

[5]Ark. Code Ann. § 16–62–102(b) provides that every wrongful-death action shall be brought by and in the name of the personal representative of the deceased person. It is clear from the probate record that Glenda Bassett was never appointed the personal representative of the estate of David Shockley. However, none of the parties raise this issue, and therefore we do not address it.

3

*damages belong to the statutory beneficiaries personally and not the estate.* Subsection (d)(1) provides that the beneficiaries are the surviving spouse, children, father, mother, brothers, and *sisters* of the deceased person. Subsection (e) provides that no part of any recovery under the wrongful-death statute shall be subject to the debts of the deceased or become in any way part of the assets of the deceased's estate. Damages under the wrongful-death statute include mental anguish and grief normally associated with the loss of a loved one. *See* Ark. Code Ann. § 16-62-102(f).[6]

Thus, under Arkansas law, there are two separate claims that encompass different types of damages and different beneficiaries. Pertinent to this case, damages recovered in a *survival action* would go to Shockley's estate and be distributed solely to Glenda (subject to Shockley's creditors) under the terms of Shockley's will. On the other hand, damages recovered in a *wrongful-death action* would go to Shockley's statutory beneficiaries, which include Glenda, Tammy, and Alice.

As will become evident in our discussion, *infra*, it is also important to note a fundamental difference between Arkansas and Texas wrongful-death law in this regard. Under Arkansas law, statutory beneficiaries of a wrongful-death action include the decedent's sisters. *See* Ark. Code Ann. § 16-62-102(d)(1). Under Texas law, however, the statutory heirs to a wrongful-death claim are limited to the surviving spouse, children, and parents of the deceased. Statutory heirs do not include siblings. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.004 (West 2008). Thus, if Texas wrongful-death law is applied, Shockley's

---

[6]An exhaustive list of potential types of damages for the survival action and the wrongful-death action is set forth in AMI Civil 2216 (November 2020 update).

4

sisters would not be wrongful-death beneficiaries, and any recovery of damages could go only to Shockley's estate, of which Glenda is the sole beneficiary. It is with this backdrop that we analyze the events and issues that arose in this case.

After being appointed as executor of Shockley's estate on August 17, 2017, Glenda filed on September 21, 2017, a petition for approval of attorney employment contract. The petition stated that Glenda had entered into a contract with attorneys in Harrison, Arkansas, and Batesville, Arkansas, to investigate and prosecute any claims that may exist by reason of Shockley's death. The petition also stated that "[p]etitioner further deems employment of counsel is in the best interest of the Decedent's Estate and of the beneficiaries under the *Arkansas Wrongful Death Act*." (Emphasis added.) On September 21, 2017, the trial court entered an order approving the attorney employment contract, and that order stated that "[p]etitioner further deems employment of counsel is in the best interest of the Decedent's Estate and of the beneficiaries under the *Arkansas Wrongful Death Act*." (Emphasis added.)

Glenda, in her capacity as executor of Shockley's estate, subsequently reached a $1,000,000 settlement agreement with Flywheel, Inc., an Iowa corporation that owned the overturned tractor-trailer with which Shockley had collided, without filing suit. The $1,000,000 settlement corresponded to the limits of Flywheel's liability insurance coverage for claims arising out of bodily injury. On January 23, 2018, Glenda filed a petition for compromise settlement of tort claim. In the petition, Glenda stated that "[p]etitioner . . . deems this proposed compromise settlement to be in the best interest of the estate of the Decedent and its beneficiaries." Also on January 23, 2018, the trial court entered an order approving compromise settlement of tort claim. In that order, the trial court found that the

5

compromise settlement was in the best interest of the estate and directed that, "[u]pon receipt of the settlement proceeds, petitioner shall deposit them in the estate account, to be held subject to further Orders of this Court."

Glenda next filed a lawsuit to recover underinsured motorist (UIM) benefits from the insurer of the tractor-trailer being driven by Shockley at the time of the accident. Glenda, in her capacity as the executor of Shockley's estate, filed an amended complaint against the insurer in the civil division of Boone County Circuit Court on April 13, 2018.[7] The amended complaint asserted that the limit of the UIM insurance was $1,000,000 and requested damages in that amount. Glenda asserted that Shockley's *estate* had sustained damages caused by the negligence of the underinsured motorist, including conscious pain and suffering from having been burned alive in the post-collision fire, damages from the loss of his life, and funeral expenses. Glenda further asserted in the amended complaint:

> Decedent was survived by three siblings, Glenda Bassett, Alice Faye Barclay, and Tammy L. Davis, *all of whom are beneficiaries under the Arkansas Wrongful Death Act*. Each beneficiary has, by reason of Decedent's death, sustained damages for past and future mental anguish, and past and future loss of society, companionship, and familial relationship. Plaintiff, as the Executor, is entitled to recover for the use and benefit of the wrongful death beneficiaries, and their respective damages.

(Emphasis added.) Glenda asserted that the *aggregate damages of Shockley's estate and the wrongful-death beneficiaries* exceeded $2,000,000, and therefore the limit of the $1,000,000 UIM coverage was due and owing to the plaintiff.

---

[7]The amended complaint was the same as the original complaint except for naming the proper insurer as the defendant.

Glenda subsequently reached a settlement agreement with the UIM insurer for $637,500, which was labeled a "Release and Wrongful Death Settlement Agreement." The settlement agreement provided:

> This Release and Wrongful Death Settlement Agreement includes all individual claims of Glenda Bassett as well as any claims made or to be made on behalf of David P. Shockley, deceased, *and any and all statutory beneficiaries of the Estate of David P. Shockley, deceased, as well as anyone else pursuant to the Arkansas Wrongful Death Statutes.* This Release and Wrongful Death Settlement Agreement specifically contemplates release of all claims for wrongful death benefits.

(Emphasis added.)

On December 17, 2018, Glenda filed a petition in the probate division of Boone County Circuit Court for approval of compromise settlement of tort claim with respect to the UIM coverage. In her petition, Glenda asserted that, upon approval, "[p]etitioner will hold in the Estate Account, the proceeds of the aforesaid settlement, after discharge of attorneys' liens for fees and expenses, subject to further orders of this court." On December 18, 2018, the trial court entered an order approving compromise settlement of tort claim and finding that the settlement between the petitioner and the UIM insurer was in the best interest of the estate. In that order, the trial court ordered the petitioner to "hold the remaining settlement funds, after discharge of the attorneys' liens . . . pending further orders of this court."

On January 30, 2019, Glenda filed in the trial court a petition for authority to make distribution, stating that she was sole beneficiary in Shockley's will and she was the only party with an interest in his estate. Glenda alleged:

> 4. Petitioner has made claim against both the owner of the other motor vehicle involved in Decedent's fatal motor vehicle accident, and Decedent's underinsured motorist insurer, both of which have been settled. Petitioner's attorneys' liens for

7

fees for services rendered and expenses incurred have been satisfied, and Petitioner now holds in the Estate Account, the net proceeds from these settlements.

5. *Texas Wrongful Death Act*[8] is for the exclusive benefit of the surviving spouse, children, and parents of a decedent; Decedent was not survived by a spouse, children or parents; therefore, under Texas law, a wrongful death claim arising out of Decedent's death would not lie; Texas law does, however, provide for survivorship of causes of action owned by the Decedent at the time of his death. The claims resulting in the aforesaid settlements were pursued by Petitioner as Executrix of Decedent's estate.

6. That the funds held by Petitioner are estate assets, and therefore are subject to distribution under the Will; Petitioner is the sole distributee of Decedent's estate, and therefore, requests that she be authorized by Order of the Court, to distribute the aforesaid funds to herself.

7. Decedent is survived by two sisters, Alice Fay Barclay and Tammy L. Davis; who are not, however, beneficiaries under the Will, and therefore are not distributees of the Decedent's estate; petitioner, however, is giving this notice under the presentation of this Petition to the Court, in the event they desire to be heard.

(Emphasis added.)

On February 19, 2019, Tammy and Alice were given notice of Glenda's petition for authority to make distribution and of the April 2, 2019, hearing date on the petition. This was the first notice that Glenda had served on Tammy and Alice in any capacity in the probate proceeding. On February 28, 2019, Tammy and Alice entered their appearance in the case.

On March 4, 2019, Tammy and Alice filed an objection to authority to make distribution. Tammy and Alice cited the Arkansas wrongful-death statute, stated that Arkansas has jurisdiction, and asserted that they were entitled to their share of the wrongful-

---

[8]This was the first time Glenda attempted to invoke the Texas Wrongful Death Act as she asserted in both previous petitions for approval of settlements in probate court that the Arkansas Wrongful Death Act was applicable.

8

death settlement proceeds because they are statutory beneficiaries. Tammy and Alice asked that Glenda's petition be denied until an order was entered fixing the share of the wrongful-death beneficiaries. An amended objection was filed by Tammy and Alice on March 5, 2019, wherein they argued that Glenda, as executor, "appears to be asking the court to suddenly apply Texas law to an Arkansas case where all the parties in interest are Arkansas residents, and even where the Executrix has asserted that the Arkansas Wrongful Death Statute applies." Tammy and Alice alleged that Glenda, as executor, "wishes to now apply Texas law so she may receive the proceeds as the sole distributee under the Decedent's Will," and that "[t]o do so would be a miscarriage of justice."[9]

On April 2, 2019, a hearing on Glenda's petition for authority to make distribution was held. At the conclusion of the hearing, the parties agreed to brief the choice-of-law issue.

On April 17, 2019, Tammy and Alice filed a brief arguing that the Arkansas Wrongful Death Act applied to the settlement proceeds and that as wrongful-death beneficiaries, they were entitled to share in the settlement proceeds. Tammy and Alice asserted that Glenda was barred by judicial estoppel from claiming that Texas law applied and asserted further that the undisputed facts favored jurisdiction in Arkansas as opposed to Texas because Arkansas has the most connections with this case. Tammy and Alice requested that the trial court fix a fair and just share of the settlement proceeds to be distributed to the wrongful-death statutory beneficiaries.

_____

[9]We observe that nothing related to this case was ever filed in a Texas court.

Also on April 17, 2019, Glenda filed a brief wherein she argued the choice-of-law issue. Glenda argued that because the accident occurred in Texas, Texas would have jurisdiction over the defendant tortfeasor. As such, Glenda asserted that the trial court in this case should apply Texas law.

On October 21, 2019, the trial court entered an order denying Tammy and Alice any relief. The trial court made these pertinent findings:

> Before any final distribution the parties ask the Court to decide the issue of choice of law as to whether the law of Texas applies to distribution of the funds received as a result of the death of David Shockley or whether the law of Arkansas applies to said distribution under the Wrongful Death Statute.
>
> . . . .
>
> The employment contract entered into in relation to recovery for the tort action and underinsured motorist claim as well as approval of the contract and settlement for both were actions taken by the Executor in her capacity as a duly appointed Executor for the Estate of David Shockley. The funds received for these settlements were ordered to be deposited into the "estate account." Both settlements were negotiated and funds received by and through Glenda Bassett as Executor of the Estate of David Shockley. At no point has either settlement been obtained and the proceeds received by any person in their individual capacity or as an heir at law. Glenda Bassett, as Executor, had full authority as set forth in A.C.A. 28-48-108 to employ counsel to pursue the tort claims in connection with the administration of the estate and provide compensation as an item of expense of administration. The Executor entered into the settlements for the benefit of the estate and approval given by Order of the Court in this pending probate case. There remains no cause of action by any heir at law separate from this probate action.
>
> . . . .
>
> Also, there is no wrongful death action pending. Neither the Executor nor the heirs at law have taken any steps to file a wrongful death action pursuant to A.C.A. 16-62-102. An action under UIM coverage, as set out above, was dismissed with settlement achieved by the Executor, Glenda Bassett in her capacity as same. It is proposed that this Court should assert jurisdiction and apply wrongful death statutes to this cause of action. Both sides make multiple arguments for why the jurisdiction of each state, Texas and Arkansas, through their respective wrongful death statutes should apply. The proponents are asking the Court to grasp one "speculative theory"

10

over the other. In reality, there appears to be multiple jurisdictions for which one might suppose to find that jurisdiction lies and an applicable wrongful death statute might apply including possibly Texas, Arkansas or Iowa. While both sides set out and argue for long arm jurisdiction applying civil methodology as well as having the opportunity to file this matter as a wrongful death action, neither a civil action nor a wrongful death proceeding is what is before the Court.

This Court has a Will admitted to probate which remains valid without objection. The Will sets out in paragraph three (3) that all the estate, after payment of debt and expenses, shall pass to Glenda Bassett. The case began as a "full" probate and has proceeded as same for two years. The fillings by Tammy Davis and Alice Barclay have not alleged the invalidity of the Will nor has a Will contest ever been filed. The case is in a posture for distribution of the assets of the estate per the Will subject to creditor's claims.

The Court hereby finds the Petition for Authority to Make Distribution of the assets of the Estate pursuant to the Last Will and Testament of David Shockley may proceed upon resolution of any outstanding claims that remain. Any relief claimed by the Objection and Amended Objection of Tammy Davis and Alice Barclay are denied.

Tammy and Alice now appeal from the trial court's October 21, 2019, order wherein the trial court denied the appellants' claim for a portion of wrongful-death settlement proceeds obtained by Glenda in Glenda's capacity as executor of Shockley's estate. On appeal, appellants argue that the trial court erred in refusing to distribute any of the wrongful-death benefits to Tammy and Alice as statutory wrongful-death beneficiaries. Appellants also argue that judicial estoppel bars Glenda's claim that Texas law applies to the distribution of the settlement proceeds. Finally, appellants contend that, even if judicial estoppel does not apply, a conflict-of-laws analysis favors applying Arkansas law under the circumstances presented in this case.

As an initial matter, we must address Glenda's argument that this appeal should be dismissed for lack of jurisdiction. Glenda's argument is premised on the fact that Tammy and Alice did not timely appeal from either the January 23, 2018, order approving the

11

$1,000,000 compromise settlement with Flywheel Insurance or the December 18, 2018, order approving the $637,500 UIM compromise settlement. Glenda asserts that these orders, which were undisputedly appealable, had the effect of distributing all the settlement proceeds to the estate and remain unchallenged. However, while we agree that these prior orders were appealable, we do not agree that they amounted to orders of distribution from which appellants were required to appeal in order to preserve the arguments now being raised. Aside from the fact that appellants had no notice of the probate proceedings at the time these prior orders were entered and thus could not have timely appealed from them, the appellants do not object to the trial court's approval of these settlements. What appellants object to is the trial court's October 21, 2019, distribution order, from which they did timely appeal, wherein the trial court denied their claim for a distribution of the settlements.

Pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12), all probate orders are appealable, except for an order removing a fiduciary for failure to give a new bond or render an accounting required by the court, or an order appointing a special administrator. Therefore, the January 23, 2018, order approving the compromise settlement and the December 18, 2018, order approving the compromise settlement were appealable orders from which an appeal could be taken within thirty days pursuant to Arkansas Rule of Appellate Procedure–Civil 4(a). It is undisputed that appellants took no appeal from these orders. Generally, when a litigant seeks to challenge an order that may be appealed at the interlocutory stage, the litigant *must* appeal from that order to preserve his or her rights and

12

may not elect to raise the challenge in an appeal from a subsequent appealable order. *See In re Estate of Stinnett*, 2011 Ark. 278, 383 S.W.3d 357.

Nevertheless, appellants' failure to appeal from the two prior settlement-approval orders is inconsequential because appellants have no objection to the settlements themselves or to the orders approving them. In fact, appellants acknowledge that Glenda, as executor, made a good recovery on behalf of the estate and the wrongful-death beneficiaries. Appellants' challenge instead arises from the subsequent proceedings in which they asserted an interest in the settlement proceeds, and the trial court's October 21, 2019, order wherein the trial court denied their claim for their share of the distributions under the Arkansas wrongful-death statute. The trial court's January 23, 2018, order of approval of the compromise settlement provides, "Upon receipt of the settlement proceeds, petitioner shall deposit them in the estate account, *to be held subject to further Order of this Court*." (Emphasis added.) Similarly, the trial court's December 18, 2018, order of approval of the compromise settlement provides, "Petitioner should be, and hereby is ordered to hold the remaining settlement funds . . . *pending further orders of this court*." (Emphasis added.) Neither of these orders decided how the settlement funds would be distributed, and both contemplated further action by the trial court in making the distributions. The personal representative is the party to bring a wrongful-death action, and once a settlement is obtained, the administrator holds the wrongful-death proceeds on behalf of the statutory beneficiaries until the money is apportioned by the probate court pursuant to the terms of the wrongful-death statute. *Douglas v. Holbert*, 335 Ark. 305, 983 S.W.2d 392 (1998). Because the appellants herein do not challenge the prior orders approving the settlement agreements but

instead challenge only the October 21, 2019, order wherein their claim for distribution of the proceeds was denied, we conclude that we have jurisdiction over the claims raised in this appeal.

Having determined that we have jurisdiction, we now turn to the merits of this appeal. We review probate proceedings de novo, and we will not reverse the decision of the trial court unless it is clearly erroneous. *Smith v. Estate of Howell*, 372 Ark. 186, 272 S.W.3d 106 (2008).

Appellants' first argument is that the trial court erred in not apportioning a share of the wrongful-death proceeds to all the statutory beneficiaries under Arkansas law. Arkansas Code Annotated section 16-62-102(g) of the Arkansas wrongful-death statute provides, in relevant part:

> The judge of the court in which the claim or cause of action for wrongful death is tried or is submitted for approval of a compromise settlement, by judgment or order and upon the evidence presented during trial or in connection with any submission for approval of a compromise settlement, shall fix the share of each beneficiary, and distribution shall be made accordingly.

In *Douglas, supra*, the probate court approved a wrongful-death settlement obtained by the special administrator of his decedent wife's estate. Over the objection of the other beneficiaries under the Arkansas wrongful-death statute, the trial court subsequently entered on order distributing all the wrongful-death proceeds to the special administrator on the basis that the other statutory beneficiaries failed to participate in the wrongful-death action. The supreme court held that the trial court erred in this regard, and wrote:

> The plain language of subsection [16-62-102] (b) makes it clear that a personal representative of the estate may file a wrongful-death action on behalf of the statutory beneficiaries. On this subject, we have said that the personal representative is clearly

14

the party to bring the wrongful-death action and that the other statutory beneficiaries have no standing to bring the lawsuit or to even choose counsel to pursue the claim.

. . . .

Once a settlement is obtained, subsection (e) declares that the settlement proceeds do not become assets of the decedent's estate to be distributed pursuant to a will or the laws of intestate succession. Instead, the proceeds of a wrongful-death action are for the sole benefit of the statutory beneficiaries and may not be used to pay off debts of the estate. In this respect, we have said that the administrator is a trustee of conduit, who holds the proceeds of the wrongful-death action in trust for the benefit of the widow and next of kin.

. . . .

Pursuant to these statutory provisions and our case law, we conclude that as special administrator of Lorie Lantrip Holbert's estate, Mr. Holbert had the sole authority to pursue the wrongful-death action on behalf of all the statutory beneficiaries. . . . Once obtained, the proceeds of the settlement did not become assets of the estate or the personal property of Mr. Holbert. Instead, as special administrator, Mr. Holbert obtained and held the wrongful-death proceeds on behalf of all the statutory beneficiaries until the money could be apportioned by the probate court pursuant to terms of the wrongful-death statute, Ark. Code Ann. § 16-62-102.

*Douglas*, 335 Ark. at 313–15, 983 S.W.3d at 396–97 (footnote & citations omitted). The

supreme court in *Douglas* held that the appellants, as statutory beneficiaries, had a right to

claim a portion of the wrongful-death settlement as compensation for their mental anguish.

The supreme court reversed the trial court's order distributing the full amount to the special

administrator and remanded for an apportionment hearing in which all the statutory

beneficiaries may participate and present evidence of their respective rights to the proceeds

of the wrongful-death settlement. Citing the supreme court's *Douglas* holding, the

appellants herein argue that the trial court erred in failing to apportion the settlement

proceeds among the statutory wrongful-death beneficiaries, which included not just Glenda

but all three of the decedent's sisters.

15

Appellants next argue that judicial estoppel bars Glenda's claim that Texas law applies to the settlement proceeds.[10]  In *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004), the supreme court stated that a party is bound by his pleadings and the allegations therein and may not avail himself of inconsistent positions in litigation concerning the same subject matter.  The elements of judicial estoppel are:

1. A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;

2. A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage;

3. A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and

4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

*Dupwe*, 355 Ark. at 533–34, 140 S.W.3d at 472.  The application of judicial estoppel requires a showing by the party seeking to invoke judicial estoppel that the petitioner acted fast and loose with the courts.  *Dupwe, supra.*

In Glenda's petition for approval of the attorney employment contract, which was approved by the trial court, Glenda asserted that she deemed that "employment of counsel is in the best interest of the Decedent's estate *and the beneficiaries under the Arkansas Wrongful Death Act*."  (Emphasis added.)  In Glenda's lawsuit against the UIM insurance carrier filed in the civil division of Boone County Circuit Court, Glenda specifically pled on behalf of all three siblings asserting that they were statutory beneficiaries under the Arkansas Wrongful

---

[10]As previously stated, under the Texas wrongful-death statute, siblings are not beneficiaries, and the appellants would thus not be entitled to any of the settlement proceeds. Conversely, the Arkansas wrongful-death statute includes siblings as beneficiaries.

Death Act.  The ensuing settlement agreement was a release of all claims made by any statutory beneficiaries pursuant to the Arkansas wrongful-death statutes.  Then, in her petition for authority to make distribution of the settlements, Glenda for the first time attempted to invoke the Texas Wrongful Death Act.[11]  The appellants contend that Glenda's position that Texas law applied was inconsistent with her prior positions taken in the probate court and circuit court proceedings, and that it was with the intent to manipulate the judicial system and gain an unfair advantage.  The appellants argue that Glenda's attempt to change course and invoke Texas law is barred by judicial estoppel.

Finally, appellants argue that, aside from judicial estoppel, the circumstances herein favor application of Arkansas law.  Arkansas courts had historically applied the *lex loci delicti* rule, meaning that an action for wrongful death is based on the statute of the place where the injury occurred that caused the death.  *See McGinty v. Ballentine Produce, Inc.*, 241 Ark. 533, 408 S.W.2d 891 (1966).  However, subsequent supreme court cases have softened what previously had been a rigid application of the former rule of law.  *See Gomez v. ITT Educ. Servs., Inc.*, 348 Ark. 69, 71 S.W.3d 542 (2002).  Citing *Schlemmer v. Fireman's Fund Insurance Co.*, 292 Ark. 344, 730 S.W.2d 217 (1987), and *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977), the supreme court in *Gomez* listed these five choice-influencing factors in deciding which law applies:  "(1) predictability of results; (2)

_____

[11]Glenda notes, correctly, that the $1,000,000 settlement agreement with the tortfeasor did state that the agreement shall be construed according to Texas law.  The appellants, however, argue that this means only that the settlement agreement is to be interpreted under Texas law and has no bearing on how the Arkansas court distributes the proceeds.  At any rate, Glenda never mentioned the Texas Wrongful Death Act until filing her petition seeking the full distribution of the settlements.

maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Gomez*, 348 Ark. at 76–77, 71 S.W.3d at 546.

The appellants argue that the above factors favor application of the Arkansas Wrongful Death Act as opposed to the Texas Wrongful Death Act. The appellants note that the decedent lived in Arkansas and that two of his three sisters live in Arkansas, with the other residing in Missouri. Glenda availed herself of the Arkansas courts by opening a probate estate in Boone County and by filing a lawsuit against the UIM insurer in Boone County wherein she specifically invoked the Arkansas Wrongful Death Act on behalf of all three beneficiaries. Glenda's attorneys, who were approved by the trial court and negotiated the settlements, are Arkansas attorneys whom she enlisted, in part, to seek relief for the beneficiaries under the Arkansas Wrongful Death Act. Under such circumstances, the appellants maintain that the Arkansas Wrongful Death Act applies and that they should accordingly be included in the settlement distributions. Because we agree with appellants' argument that the Arkansas Wrongful Death Act should have been applied in this case based on the five choice-influencing factors, and we reverse and remand on that basis, it is unnecessary to discuss the appellants' judicial-estoppel claim.

In this probate case, the primary issue was whether the Arkansas Wrongful Death Act or the Texas Wrongful Death Act was applicable with respect to the settlement proceeds. Glenda argued that the Texas Act applies; the appellants argued that the Arkansas Act applies. It is evident, as clearly represented by Glenda in her Boone County lawsuit filed against the UIM insurer, that there were damages under both the survival statute (which

18

would inure solely to the benefit of the estate, to which Glenda is the sole beneficiary) and the wrongful-death statute (which would inure to the benefit of all three sister/beneficiaries) under Arkansas law if applicable. In the trial court's order, instead of deciding the pivotal choice-of-law issue briefed by the parties, the trial court stated only that both the Arkansas and Texas wrongful-death statutes *might* apply and then summarily denied all relief claimed by the appellants, which included an apportionment of their share of the wrongful-death proceeds. The trial court, in effect, awarded all the insurance settlement proceeds to the estate. We conclude that this was error.

Under our well-settled standard of review, we review probate proceedings de novo, and we will not reverse the decision of the trial court unless it is clearly erroneous. *Smith v. Estate of Howell*, 372 Ark. 186, 272 S.W.3d 106 (2008). Stated differently, we conduct a de novo review of probate court orders, but absent clear error, an order of the probate court will not be reversed. *White v. Welsh*, 323 Ark. 479, 915 S.W.2d 274 (1996). In our de novo review of the trial court's order, we hold that clear error occurred in failing to apportion damages to the estate and to the three beneficiaries pursuant to the Arkansas Wrongful Death Act.

In *Schlemmer*, 292 Ark. at 346, 730 S.W.2d at 218, our supreme court stated:

> For many years this Court, like others, used mechanical rules, such as the rule of lex loci delicti, to answer conflict questions. However, in 1966 Dr. Robert A. Leflar began to write about the more flexible "choice-influencing considerations." *See* Leflar, *Choice-Influencing Considerations in Conflicts Law,* 41 N.Y.U.L. Rev. 267 (1966); Leflar, *Conflicts Law: More on Choice-Influencing Considerations,* 54 Calif. L. Rev. 1584 (1966); R. Leflar, *American Conflicts Law,* Chapter 11, (1968); Leflar, *Conflict of Laws: Arkansas—The Choice-Influencing Considerations,* 28 Ark. L. Rev. 199 (1974). Other states quickly adopted Dr. Leflar's concept of the choice-influencing considerations.

In deciding the choice-of-law question presented in *Schlemmer*, the supreme court applied and weighed the five choice-influencing considerations, which include: "(1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Schlemmer*, 292 Ark. at 346, 730 S.W.2d at 219; *see also Gomez*, *supra*.

Applying these considerations to the instant case, we conclude that the Arkansas Wrongful Death Act should have been applied by the trial court. The first factor is predictability of results. Here, the decedent resided in Arkansas at the time of his death, and two of the three parties involved in this litigation reside in Arkansas. None of the parties live in Texas, nor was there any evidence of any significant contacts with that state. Moreover, Glenda opened the probate action in Arkansas, and no probate action nor any other proceeding was ever initiated in Texas. In *Gomez*, *supra*, the supreme court indicated that this first factor weighs against forum shopping, which Glenda evidently attempted to do by claiming the application of the Texas Wrongful Death Act in these Arkansas proceedings to prevent any recovery by her sisters. As such, this factor weighs in favor of applying the Arkansas Wrongful Death Act to the settlement proceeds.

The second factor is maintenance of interstate and international order. While we conclude that this factor is of no great concern here, it militates in favor of applying Arkansas law where most of the parties reside in Arkansas and none live in Texas.

The third factor, simplification of the judicial task, is ordinarily not a paramount consideration because the law does not exist for the convenience of the court that

20

administers it, but for society and its members. *See Gomez*, *supra*. It does not appear here that either of the states' laws are favored under this consideration.

The fourth factor, however, is the advancement of the forum's governmental interest. This consideration weighs heavily in our analysis because of the mere tangential nature of the parties' connection with Texas. Other than being the occurrence of the accident site, Texas lacks any significant link to this litigation. Glenda, an Arkansan, availed herself of the Arkansas courts using Arkansas attorneys to procure the settlements on behalf of the wrongful-death beneficiaries. Simply put, Texas has few, if any, governmental interests in this case because no citizen of Texas is involved.

The final consideration is the application of the better rule of law. In analyzing this consideration in *Gomez*, the supreme court, citing the *Restatement (Second) of Conflicts of Law* § 175, stated that in an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties *unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied*. 348 Ark. at 79, 71 S.W.3d at 548. Here, there is a more significant relationship with Arkansas than Texas. Moreover, under Texas law Shockley would have no remaining beneficiaries, whereas under Arkansas law his three surviving sisters would have a claim to the wrongful-death proceeds. We conclude that this final factor also weighs in favor of applying Arkansas law to the settlement proceeds.

Having considered and weighed all five choice-influencing considerations, we are convinced that the Arkansas Wrongful Death Act must be applied to this case. It is patently clear that Arkansas has a much greater relationship to the parties and litigation involved, and

21

under the circumstances presented it would be unjust to apply Texas law to the settlement proceeds that were recovered under Arkansas law. We reverse and remand for further proceedings to decide the parties' respective rights and apportion the survival–action damages and the wrongful–death damages in accordance with the Arkansas Wrongful Death Act.

Reversed and remanded.

KLAPPENBACH and BROWN, JJ., agree.

*Sprott, Golden & Bardwell*, by: *Kelsey K. Bardwell*; and *Cullen & Co., PLLC*, by: *Tim Cullen*, for appellants.

*Jeremy B. Lowrey* and *Grant Ragland*, for appellee.